UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
CHRISTOPHER JOHNSON,                          :
                                              :
                              Plaintiff,      :          19-cv-6480 (PMH)(AEK)
                                              :
              -against-                       :
                                              :
TROOPER ANDREW McMORROW, et al.,              :
                                              :
                              Defendants.     :
---------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT


LETITIA JAMES
Attorney General of the State of New York
*Attorney for the Defendants*
28 Liberty Street
New York, New York 10005
(212) 416-8591


John R. Doran
Assistant Attorney General
<u>of</u> Counsel

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... i

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 1

LEGAL STANDARD................................................................................................................ 5

ARGUMENT ............................................................................................................................. 6

POINT I        PLAINTIFF'S MALICIOUS PROSECUTION CLAIM FAILS AS A MATTER
               OF LAW ...................................................................................................... 6

    A.        Probable Cause Existed to Believe That Plaintiff Had Committed Several Crimes 6

    B.        Troopers McMorrow and Rodriguez did not Initiate Plaintiff's Prosecution ....... 13

    C.        Plaintiff Also Cannot Establish Malice on the Part of Either Trooper ................. 15

    D.        Plaintiff's State Law Malicious Prosecution Claim Fails for the Same Reasons . 18

POINT II       PLAINTIFF'S FAIR TRIAL CLAIM FAILS AS A MATTER OF LAW............. 18

POINT III      PLAINTIFF'S FAILURE TO INTERVENE CLAIM FAILS ............................. 21

POINT IV       TROOPERS MCMORROW AND RODRIGUEZ ARE ENTITLED TO
               QUALIFIED IMMUNITY ................................................................................. 23

CONCLUSION......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albright v. Oliver,*
510 U.S. 266 (1994)..............................................................................................13

*Anderson v. Creighton,*
283 U.S. 635 (1987)..........................................................................................8, 24

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................................................... 16-17

*Cancel v. Kelly,*
No. 13-CV-6007 (JMF), 2016 WL 590230 (S.D.N.Y. Feb. 11, 2016 )...................17

*Caravalho v. City of New York,*
No. 13-cv-4174 (PKC)(MHD), 2016 WL 4154273 (S.D.N.Y. July 29, 2016),
*aff'd Caravalho v. City of New York,* 732 F. App'x 18 (2d Cir. 2018) .................21

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)...............................................................................................5

*Cerrone v. Brown,*
246 F.3d 194 (2d Cir. 2001)..................................................................................23

*Colon v. City of New York,*
60 N.Y.2d 78 (1983), *rearg. denied,* 61 N.Y.2d 670, (1983) .................................10

*Curley v. Vill. of Suffern,*
268 F.3d 65 (2d Cir. 2001)......................................................................................7

*Davis v. State of New York,*
316 F.3d 93 (2d Cir. 2002)......................................................................................5

*DiMascio v. City of Albany,*
205 F.3d 1322 (2d Cir. 2000)..........................................................................11, 16

*Duse v. IBM,*
252 F.3d 151 (2d Cir 2001).....................................................................................5

*Escalera v. Lunn,*
361 F.3d 737 (2d Cir. 2004)....................................................................................7

*Fappiano v. City of New York,*
640 F. App'x 115 (2d Cir. 2016) .........................................................................18

*Figueroa v. Mazza,*
825 F.3d 89 (2d Cir. 2016)....................................................................................23

*Garcia v. Does*,
  779 F.3d 84 (2d Cir. 2014)..................................................................................24

*Garnett v. Undercover Officer C0039*,
  838 F.3d 265 (2d Cir. 2016).................................................................................19

*Gonzalez v. City of Schenectady*,
  728 F.3d 149 (2d Cir. 2013).................................................................................23

*Heck v Humphry*,
  512 U.S. 477 (1994)....................................................................................10, 20

*Horvath v. City of New York*,
  No. 12 CV 6005 RJD JMA, 2015 WL 1757759 (E.D.N.Y. Apr. 17, 2015)...........................19

*Hoyos v. City of New York*,
  999 F. Supp. 2d 375 (E.D.N.Y. 2013) ....................................................................20

*Jovanovic v. City of New York*,
  486 F. App'x 149 (2d Cir. 2012) ..........................................................................20

*Kass v. City of New York*,
  864 F.3d 200 (2d Cir. 2017)..............................................................................6-7

*Keith v. City of New York*,
  641 F. App'x 63 (2d Cir. 2016) ...........................................................................24

*Komlosi v. Fudenberg*,
  No. 88 CIV. 1792 HBP, 2000 WL 351414 (S.D.N.Y. Mar. 31, 2000), *adhered
  to on reconsideration sub nom. Komlosi v. New York State Office of Mental
  Retardation*, No. 88 CIV. 1792 (HBP), 2000 WL 554226 (S.D.N.Y. May 4,
  2000), *aff'd*, No. 01-89 (XAP), 2002 WL 34244996 (2d Cir. 2002)......................................15

*Kulak v. City of New York*,
  88 F.3d 63 (2d Cir. 1996)...................................................................................5

*Lopez v. City of New York*,
  105 F. Supp. 3d 242 (E.D.N.Y. 2015) ....................................................................20

*Manganiello v. City of New York*,
  612 F.3d 149 (2d Cir. 2010)...........................................................................13, 18

*Marcavage v. City of New York*,
  689 F.3d 98 (2d Cir. 2012)..................................................................................7

*Matthews v. City of New York*,
  889 F.Supp.2d 418 (E.D.N.Y.2012) ......................................................................23

*McCaffrey v. City of New York*,
  No. 11 Civ. 1636 (RJS), 2013 WL 494025 (S.D.N.Y. Feb. 7, 2013) ........................17, 19, 24

*Mitchell v. City of New York*,
  841 F.3d 72 (2d Cir. 2016) ...............................................................................................6

*Morgan v. County of Nassau*,
  720 F.Supp.2d 229 (E.D.N.Y. 2010) ..............................................................................22

*Morse v. Fusto*,
  804 F.3d 538 (2d Cir. 2015) ...........................................................................................21

*Munoz v. City of New York*,
  18 N.Y.2d 6 (1966) .................................................................................................. 15-16

*Nardelli v. Stamberg*,
  44 N.Y.2d 500 (1978) .....................................................................................................18

*Nesbitt v. Cty. of Nassau*,
  No. 05 Civ. 5513, 2006 WL 3511377 (E.D.N.Y. Dec. 6, 2006) .............................................14

*Ochoa v. Bratton*,
  No. 16-CV-2852 (JGK), 2017 WL 5900552 (S.D.N.Y. Nov. 28, 2017) ...............................17

*Panetta v. Crowley*,
  460 F.3d 388 (2d Cir. 2006) ..............................................................................................7

*Pearson v. Callahan*,
  555 U.S. 223 (2009) ........................................................................................................23

*People v. Paddock*,
  29 N.Y.2d 504 (1971) ........................................................................................................9

*People v. Robinson*,
  97 NY2d 341 (2001) ...................................................................................................8, 10

*People v. Samuels*,
  49 N.Y.2d 218 (1980) ......................................................................................................14

*People v. Smith*,
  18 N.Y.3d 544 (2012) ........................................................................................................9

*People v. Swan*,
  90 A.D.3d 1146 (3d Dept 2011) ......................................................................................14

*People v. Thomas*,
  46 N.Y.2d 100 (1978) ........................................................................................................9

*People v. Wright*,
    228 A.D.2d 709 (2d Dept 1996) ..................................................................14

*Posner v. City of New York*,
    No. 11 CIV. 4859 JMF, 2014 WL 185880 (S.D.N.Y. Jan. 16, 2014) .......................22

*Rae v. Cty. of Suffolk*,
    693 F. Supp. 2d 217 (E.D.N.Y. 2010) .........................................................24

*Ramchair v. Conway*,
    601 F.3d 66 (2d Cir. 2010)...........................................................................18

*Rehberg v. Paulk*,
    566 U.S. 356 .................................................................................12, 17

*Ricciuti v. N.Y.C. Transit Auth.*,
    124 F.3d 123 (2d Cir. 1997)...........................................................................22

*Richardson v. Selsky*,
    5 F.3d 616 (2d Cir. 1993)...............................................................................25

*Rohman v. New York City Transit Auth. (NYCTA)*,
    215 F.3d 208 (2d Cir. 2000)............................................................... 13-14

*Rothstein v. Carriere*,
    373 F.3d 275 (2d Cir. 2004)...............................................................6, 10

*Rounseville v. Zahl*,
    13 F.3d 625 (2d Cir. 1994)...........................................................................16

*Townes v. City of New York*,
    176 F.3d 138 (2d Cir. 1999), *cert. denied*, 528 U.S. 964 (1999)) ...........................11

*United States v. Gaskin*,
    364 F.3d 438 (2d Cir. 2004).............................................................................7

*Valencia ex rel. Franco v. Lee*,
    316 F.3d 299 (2d Cir. 2003)...........................................................................18

*Washington v. County of Rockland*,
    373 F.3d 310 (2d Cir. 2004)...........................................................................15

*Westinghouse Credit Corp. v. D'Urso*,
    278 F.3d 138 (2d Cir. 2002).............................................................................5

*Williams v. City of New York*,
    No. 02 CIV.3693(CBM), 2003 WL 22434151 (S.D.N.Y. Oct. 23, 2003), *aff'd*,
    120 F. App'x 388 (2d Cir. 2005) ...........................................................9, 12, 15

iv

*Woodley v. City of New York*,
    No. 09-cv-5709 (BMC), 2010 WL 4704468 (E.D.N.Y. Nov. 10, 2010)................................10

*Zahrey v. Coffey*,
    221 F.3d 342 (2d Cir. 2000).................................................................................................20

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment .......................................................................................................... passim

Fourteenth Amendment ................................................................................................... passim

**FEDERAL STATUTES**

42 U.S.C.
    § 1983............................................................................................................................ passim

## PRELIMINARY STATEMENT

Defendants Trooper Andrew McMorrow and Trooper Marisa Rodriguez, current employees of the New York State Police, by their attorney, Letitia James, the Attorney General of the State of New York, respectfully submit this memorandum of law in support of their motion for summary judgment pursuant to Fed. R. Civ. P. 56.

In this matter, Plaintiff brings this 42 U.S.C. § 1983 action alleging that he was maliciously prosecuted and denied a fair trial when Troopers McMorrow & Rodriguez purportedly fabricated evidence, regarding Plaintiff's intoxication, on the night of February 9, 2018. *See Comp generally*. Plaintiff further claims that the Troopers maliciously prosecuted him under state-law and that Trooper Rodriguez failed to intervene and correct the purported fabrications. *Id.*

Plaintiff's Complaint, however, should be dismissed in its entirety because the undisputed evidence establishes that: (1) Plaintiff was not maliciously prosecuted because probable cause existed to charge the Plaintiff and, in any event, the Troopers did not initiate the prosecution or do so with malice, (2) neither Trooper fabricated any evidence and as a result, Plaintiff was not denied his right to a fair trial, and (3) Trooper Rodriguez did not fail to intervene because no constitutional violation occurred which warranted her intervention. Moreover, the undisputed evidence also demonstrates that, at a minimum, the Troopers are entitled to qualified immunity.

Finally, and although the Complaint further alleges Intentional Infliction of Emotional Distress and abuse of process, *see Comp 5th and 6th Causes of Action*, these claims should be dismissed because Plaintiff has withdrawn them. *See Dkt. No. 82 pg 3-4* (Plaintiff's opposition to the Defendants' application for a pre-motion conference where Plaintiff withdrew both claims).

## STATEMENT OF FACTS

On February 9, 2018, while in a marked patrol car, Troopers McMorrow and Rodriguez

observed a white Dodge Challenger (the "vehicle") traveling at a visually estimated rate of speed of 80-mph in a 55-mph zone. *See Rule 56.1 statement* (herein after "56.1") *¶ 15*; *see also Declaration of Trooper Andrew McMorrow* (hereinafter "McMorrow Decl") *¶ 17*; *Declaration of Trooper Marisa Rodriguez* (hereinafter "Rodriguez Decl") *¶ 14*. After making this observation, Trooper Rodriguez then activated the patrol car's radar system and confirmed the vehicle's rate of speed to be in the mid-70s. *See 56.1 ¶ 17*; *McMorrow Decl ¶ 17*; *Rodriguez Decl ¶ 15*. The Troopers then began following the vehicle where they observed multiple traffic violations, including a change of the vehicle's rate of speed, without explanation, and several illegal lane changes. *See 56.1 ¶ 18-20*; *McMorrow Decl ¶ 19-20*; *Rodriguez Decl ¶ 16*. Believing that the vehicle posed a danger to its occupants, the patrol car's lights and sirens were activated and the Troopers began the process of pulling over the vehicle. *See 56.1 ¶ 21-22*; *McMorrow Decl ¶ 22-23*; *Rodriguez Decl ¶ 17-18.*

Once the vehicle had stopped, and prior to discovering who the occupants of the vehicle where, Trooper McMorrow agreed, at the request of Trooper Rodriguez, to take the lead on interviewing the driver of the vehicle. *See 56.1 ¶ 16, 24-25*; *McMorrow Decl ¶ 21, 23*; *Rodriguez Decl ¶ 18*. As such, Trooper McMorrow approached the driver's side door while Trooper McMorrow approached the passenger's side door. *See 56.1 ¶ 24*; *McMorrow Decl ¶ 23*; *Rodriguez Decl ¶ 18*. Upon reaching the driver's side door, Trooper McMorrow then asked the driver, who was at some point during this interaction identified as the Plaintiff, for his license and registration. *See 56.1 ¶ 25-26*; *McMorrow Decl ¶ 24-26*; *Rodriguez Decl ¶ 20*. Plaintiff, however, provided Trooper McMorrow with his entire wallet, which Trooper McMorrow handed back and made his request a second time at which point Plaintiff provided Trooper McMorrow with a conditional license. *See 56.1 ¶ 27*; *McMorrow Decl ¶ 27-28*; *Rodriguez Decl ¶ 20*.

As Trooper McMorrow continued his interview of the Plaintiff, he observed the distinct odor of alcohol coming from Plaintiff's breath. *See 56.1 ¶ 28*; *McMorrow Decl ¶ 29*. He also observed that Plaintiff's eyes appeared to bloodshot and watery, and that Plaintiff's speech was slightly slurred. *Id.* Trooper McMorrow then asked the Plaintiff if he had consumed alcohol which Plaintiff admitted to doing so while at a party approximately 20 minutes prior. *See 56.1 ¶ 29-30*; *McMorrow Decl ¶ 30*; *Rodriguez Decl ¶ 20*.

Suspecting Plaintiff may have been intoxicated, Trooper McMorrow requested the Plaintiff to step out of the vehicle in order to perform several standardized field sobriety tests ("SFST"). *See 56.1 ¶ 31*; *McMorrow Decl ¶ 24-26*; *Rodriguez Decl ¶ 20*. Upon making this request, Plaintiff was further observed to appear unsteady on his feet as he utilized the driver's side door to assist with his balance. *McMorrow Decl ¶ 31*.

Plaintiff was subsequently escorted to the front of the vehicle where Trooper McMorrow performed the following SFSTs: (1) the Horizontal Gaze Nystagmus ("HGN") test, (2) the "walk and turn" test, and (3) the "one-leg stand" test. *See 56.1 ¶ 32-33*; *McMorrow Decl ¶ 32*. Despite each test performed, Plaintiff demonstrated multiple signs indicative of an individual who was intoxicated, and, as such, Plaintiff was requested to take a preliminary breathalyzer test, but refused to do so. *See 56.1 ¶ 33-34*; *McMorrow Decl ¶ 32-36*; *Rodriguez Decl ¶ 20-22*.

Based upon the Troopers' observations of both the Plaintiff while he was driving the vehicle and after he had been pulled over, as well as Trooper McMorrow's conversations with the Plaintiff and the results of the SFSTs, Plaintiff was informed that he was under arrest and both Troopers McMorrow and Rodriguez transported the Plaintiff to the Cortlandt State Police Barracks ("Cortlandt Barracks"). *See 56.1 ¶ 35, 39*; *McMorrow Decl ¶ 36-37*; *Rodriguez Decl ¶ 21-23*. Upon arriving at the barracks, Plaintiff was taken out of the patrol car where he exhibited additions

signs of his intoxication as he appeared to be unsteady on his feet and, at one point, almost tripped going inside the building. *Rodriguez Decl ¶ 24*.

Shortly thereafter, Trooper Rodriguez read Plaintiff his Driving While Intoxicated ("DWI") refusal warnings, at least three times, and requested, also at least three times, that Plaintiff submit to a chemical breath test, however, Plaintiff continually refused to undergo any such test. *See 56.1 ¶ 40-43*; *McMorrow Decl ¶ 38-39*; *Rodriguez Decl ¶ 25*. Prior to Plaintiff's third refusal, the chemical breathalyzer instrument was calibrated and tested to ensure its accuracy. *McMorrow Decl ¶ 40-42, Ex B* (New York State Police Breath Alcohol Analysis Record report). Plaintiff was then provided one final opportunity to undergo the test but, as noted above, refused to do so, which resulted in Plaintiff's chemical breath test results to be listed as "REFUSAL". *Id.*

Based upon Troopers McMorrow and Rodriguez's observations of the Plaintiff throughout the evening, the conditional license Plaintiff provided to the Troopers, conversations the Troopers had with the Plaintiff, and Plaintiff's refusal to undergo any breathalyzer test, Troopers McMorrow and Rodriguez believed probable cause existed to charge the Plaintiff with DWI, aggravated unlicensed operation of a motor vehicle ("AUO"), and several traffic law offenses. *McMorrow Decl ¶ 43*; *Rodriguez Decl ¶ 26*. Since Plaintiff had prior DWI convictions, and was currently being prosecuted for another DWI charge, by statute, Plaintiff's DWI charge was increased to a felony. *See 56.1 ¶ 47*; *McMorrow Decl ¶ 44*. In addition, the arrest paperwork was finalized and was eventually provided to the Westchester District Attorney's Office ("Westchester DA") for their consideration of possible future prosecution who, ultimately, decided to prosecute the Plaintiff by obtaining a grand jury indictment. *See 56.1 ¶ 49, 54*; *McMorrow Decl ¶ 47-50*; *Rodriguez Decl ¶ 29-32*.

Following the grand jury indictment, Plaintiff's first criminal trial took place in early 2019

and resulted in a hung jury that was eventually declared a mistrial. *See 56.1 ¶ 55.* Following the mistrial, the Westchester DA decided to try Plaintiff a second time in mid-2019 where Plaintiff was convicted of speeding, *VTL § 1180(b),* but was acquitted of the remaining charges. *Id. ¶ 56.*

## LEGAL STANDARD

In a motion for summary judgment, the Court reviews the evidence presented by the parties to determine whether, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable factual inferences in that party's favor, the absence of genuine issues of material fact entitles the moving party to judgment as a matter of law. *See Fed. R. Civ. P 56(a)*; *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 145 (2d Cir. 2002). Defendants moving for summary judgment on the merits of a substantive claim are not required to submit evidence negating plaintiff's claim, but to make a prima facie case by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A defendant is entitled to summary judgment if the undisputed facts reveal an absence of sufficient proof as to any essential element of a claim. *See Duse v. IBM*, 252 F.3d 151, 158 (2d Cir 2001). "[C]onclusory statements, conjecture, or speculation by the party resisting the motion" will not defeat a motion for summary judgment. *See Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996); *see also Davis v. State of New York*, 316 F.3d 93, 100 (2d Cir. 2002) ("The nonmoving party must go beyond the pleadings and by [his or] her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.") (alterations in original) (citation and internal quotation marks omitted).

**ARGUMENT**

**POINT I     PLAINTIFF'S MALICIOUS PROSECUTION CLAIM FAILS AS A MATTER OF LAW**

To succeed on a claim for malicious prosecution under § 1983, a plaintiff must plead "(i) the commencement or continuation of a criminal proceeding against h[im]; (ii) the termination of the proceeding in h[is] favor; (iii) that there was no probable cause for the proceeding; … (iv) that the proceeding was instituted with malice… [and (v)] a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment". *See Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (internal quotations marks and citations omitted).

Here, Plaintiff's malicious prosecution claim fails because the undisputed evidence demonstrates that Troopers McMorrow and Rodriguez had probable cause to believe Plaintiff had committed several crimes. The claim also fails because the evidence further establishes that neither Trooper fabricated any evidence, and that they did not initiated the criminal proceedings against Plaintiff or did so with malice. Accordingly, Plaintiff cannot meet his high burden to establish this claim and, as such, summary judgment is warranted in favor of the Troopers. *See Rothstein v. Carriere,* 373 F.3d 275, 282 (2d Cir. 2004) (citation omitted) ("[b]ecause accusers must be allowed room for benign misjudgments, … the law places a heavy burden" on plaintiffs attempting to allege malicious prosecution claims).

**A.  Probable Cause Existed to Believe That Plaintiff Had Committed Several Crimes**

Plaintiff's malicious prosecution claim fails because probable cause existed to believe Plaintiff had committed several crimes. "Probable cause exists when 'the facts and circumstances within… the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has

been or is being committed by the person to be arrested.'" *Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017) (alteration in original) (*quoting Marcavage v. City of New York*, 689 F.3d 98, 109 (2d Cir. 2012)); *see also United States v. Gaskin*, 364 F.3d 438, 457 (2d Cir. 2004) (holding in establishing probable cause, "courts recognize that experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not"); *see further Panetta v. Crowley*, 460 F.3d 388, 398 (2d Cir. 2006) (holding "[w]hen making a probable cause determination, [law enforcement] officers are entitled to rely on the allegations of fellow [law enforcement] officers.") (citations and quotation marks omitted). Once probable cause is established, a law enforcement officer is not required to disprove, or even investigate, the accused's account. *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001). Even if the Court concludes that probable cause did not exist, Troopers McMorrow and Rodriguez have qualified immunity if they had "arguable probable cause" in that it was objectively reasonable for them to believe that probable cause existed, or that reasonable officers could disagree as to whether probable cause existed. *See Escalera v. Lunn*, 361 F.3d 737, 744 (2d Cir. 2004); *see also POINT IV*, *infra*, (discussing qualified immunity).

Here, probable cause, or at least arguable probable cause, existed to believe that the Plaintiff was intoxicated and had committed several crimes. Specifically, and prior to making the initial stop, Troopers McMorrow and Rodriguez observed the vehicle going a visually estimated speed of 80-mph in a 55-mph zone. *See supra*. The Troopers then confirmed that the vehicle was speeding through the use of the patrol car's radar system. *Id.* Moreover, and while following the vehicle, they further observed the vehicle's rate of speed to increase and decrease, without explanation, and that the vehicle appeared incapable of staying in a single lane. *Id.* These observations were more than sufficient to permit the Troopers to pull over the vehicle as well as

to begin suspecting that the driver might have been intoxicated. *See People v Robinson*, 97 NY2d 341, 350 (2001) (holding probable cause to believe the driver of a vehicle violated a traffic offense justifies pulling that vehicle over); *see also generally Anderson v. Creighton*, 283 U.S. 635, 641 (1987) (holding "it is inevitable that law enforcement officers will in some cases reasonably but mistakenly conclude that probable cause is preset" does not meant that the officers should "be held personally liable").

In any event, additional probable cause as to Plaintiff's intoxication was obtained after the vehicle had been stopped. To begin, Trooper McMorrow was handed, by the Plaintiff, his entire wallet despite only asking for Plaintiff's license. *See supra*. After making the request again, Trooper McMorrow further observed Plaintiff's eyes to be glassy and watery, his speech to be slow and heavy, and detected the smelled of alcohol coming from Plaintiff's breath. *Id.* Trooper McMorrow then questioned the Plaintiff if he had consumed alcohol that evening, which Plaintiff voluntarily admitted to doing so while he was at a party approximately 20 minutes prior. *Id.* Plaintiff was then asked to exist the vehicle, where Trooper McMorrow observed Plaintiff to be unsteady on his feet as the Plaintiff utilized the driver's side door to maintain his balance. *Id.*

Despite all of the observations obtained by Trooper McMorrow up to this point, he, nonetheless, continued his investigation by asking the Plaintiff to undergo three SFSTs, all of which Plaintiff failed. *See supra*. Specifically, during the HGN test, Plaintiff exhibit six signs that were indicative of an individual who was intoxicated as Plaintiff's ability to track a stimulus lacked a smooth pursuit and he also exhibited nystagmus (involuntary movement of the eyes) at both the maximum deviation and prior to a 45-degree angle. *Id.*; *see also McMorrow Decl ¶ 33, Ex A* (New York State DWI Investigation Notes). During the second test, the "walk and turn" test, Plaintiff demonstrated additional signs indicative of an individual who was intoxicated as Plaintiff was

unable to keep his balance, could not keep his arms down, failed to make consistent contact between his heals and his toes, could not walk in a straight line, and did not follow the instructions provided to him regarding the number of steps to take or that he should turn around and take that same number of steps back. *McMorrow Decl ¶ 34, Ex A*. With regards to the third SFST performed, the "one leg stand" test, Trooper McMorrow further observed additional signs that were indicative of an individual who was intoxicated as the Plaintiff continually swayed back and forth, kept trying to put his arms up, and despite being instructed not to, kept putting his right foot down in an effort to help him maintain his balance. *McMorrow Decl ¶ 35, Ex A*.

Further probable cause, as to Plaintiff's intoxication, was also obtained after Plaintiff was transported to the Cortlandt Barracks. While there, Plaintiff voluntarily admitted, to a non-party Trooper, that he was attempting to hide his intoxication. *See Declaration of John Doran* (hereinafter "Doran Decl") *Ex A* (February 20, 2019 Suppression Hearing before the Honorable Anne E. Minihan) *pg 62-63 ¶ 17-13*, *pg 80-81 ¶ 19-11*. Additionally, Plaintiff also continually refused to submit to any chemical breath test which is indicative of his "consciousness of guilt". *See People v. Smith*, 18 N.Y.3d 544, 550 (2012) (holding a criminal defendant's refusal to take a chemical breath test creates "the inference of consciousness of guilt, i.e., 'that defendant refused to take the test because of his apprehension as to whether he would pass it'") (*citing People v. Thomas*, 46 N.Y.2d 100 (1978)); *People v. Paddock*, 29 N.Y.2d 504, 506 (1971) ("It should be quite obvious that the primary reason for a refusal to submit to a chemical test is that a person fears its results").

In any event, the presumption of probable cause in this matter is also established because a grand jury indictment was obtained. *See Williams v. City of New York,* No. 02 CIV.3693(CBM), 2003 WL 22434151, at *6 (S.D.N.Y. Oct. 23, 2003), *aff'd*, 120 F. App'x 388 (2d Cir. 2005)

(holding the issuance of a grand jury indictment creates the presumption of probable cause) (*citing Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983), *rearg. denied*, 61 N.Y.2d 670, (1983)); *see further Woodley v. City of New York*, No. 09-cv-5709 (BMC), 2010 WL 4704468, at *8 (E.D.N.Y. Nov. 10, 2010) (holding it is plaintiff's "burden [to] rebut[] the presumption of probable" after a grand jury indictment has been issued) (*quoting Rothstein v. Carriere*, 373 F.3d 275, 283-84 (2d Cir. 2004). Therefore, and based upon the evidence in this matter, probable cause, or at least arguable probable cause, existed to charge the Plaintiff.

In rebuttal to the probable cause that exists here, Plaintiff makes the conclusory allegation that the Troopers fabricated evidence in that Trooper McMorrow falsely reported: Plaintiff had been speeding, he stated he was coming home from a party where he consumed alcohol, his eyes appeared glassy, his speech was slurred, he swerved from lane to lane, and that three SFSTs were administered which he failed. *Id. p33-34*. Plaintiff's allegations in rebuttal to the probable cause that exists in this matter are meritless and are not supported by the evidence.

To begin, Plaintiff is precluded from raising any challenges regarding his speeding conviction because to permit Plaintiff to engage in such challenges would essentially allow him to call into question the validity of that conviction, which has not been found to be invalid. *See Heck v Humphry,* 512 U.S. 477, 486-87 (1994) (preluding § 1983 claims that "would render a conviction or sentence invalid"). As such, and even assuming, *arguendo*, the Troopers did not observe the vehicle swerve, which they did, probable cause to pull over the vehicle clearly existed based on Plaintiff's speeding. *See Robinson*, 97 NY2d at 350.

With respect to Plaintiff's other purportedly fabricated evidence allegations (i.e. that Plaintiff admitted he was driving home from a party where he consumed alcohol, that he smelled of alcohol, that he failed three SFSTs, and that he was observed to appear intoxicated), again, such

10

claims are not supported by the evidence in this matter. Here, it undisputed that Plaintiff underwent a suppression hearing prior to his criminal trials commencing. *See Doran Decl Ex A*. At that hearing, Plaintiff did not contend that the Troopers' observations of him appearing to be intoxicated, his statements, or his three failed SFSTs were fabricated and/or did not occur as Plaintiff now claims. *Id*. Instead, Plaintiff appears to have conceded that those actions and/or observations were made but, nonetheless, attempted to suppress them because they were illegally obtained under the "fruit of the poison tree" doctrine, which, is inapplicable to § 1983 cases. *DiMascio v. City of Albany*, 205 F.3d 1322 (2d Cir. 2000) (holding "fruit of the poisonous tree doctrine is 'inapplicable to civil § 1983 actions'") (*quoting Townes v. City of New York*, 176 F.3d 138, 145-149 (2d Cir. 1999), *cert. denied*, 528 U.S. 964 (1999))

Specifically, and with respect to Plaintiff appearing intoxicated, Plaintiff did not argue that he was not intoxicated. Rather he attempted to justify his appearance by arguing the Troopers were unaware if Plaintiff was on medication prior to performing the SFSTs and "because the car is low and he is very tall[,] it's hard for a tall man to get out of a small car". *Doran Decl Ex A pg 78 ¶ 5-17*. With respect to the three SFSTs administered, again, Plaintiff did not contend that such tests were not administered, and that Plaintiff failed them, but rather offered additional explanations for why he failed those tests including that the tests are not always accurately administered and that there was "no information as to the actual ground conditions… [that] might have been sloped a little bit for run-off" which could have "throw[n Plaintiff] off during the field sobriety test[s]". *Id. pg 79 ¶ 3-18*. Finally, and in regard to Plaintiff's voluntary statements regarding his consumption of alcohol, Plaintiff also did not contend he never made such statements but rather argued that those statements should have been suppressed because the Troopers failed to provide Plaintiff with his *Miranda* warnings upon initially pulling him over and/or obtaining his conditional license and

because he was "interrogated" by another trooper, while at the Cortlandt Barracks, who "elicited a[n unconstitutional] response as to why [Plaintiff] would not take the Breathalyzer exam[ination]". *Id. pg 79-82 ¶ 19-3.*

Accordingly, and since Plaintiff did not contend, at his suppression hearing, that any of evidence gathered by the Troopers was fabricated or that it did not occur, as he claims now, but rather provided justifications for why such evidence may have been obtained or why it should be suppressed, Plaintiff's fabrication of evidence claim is clearly belied by his acknowledges, of such evidence existing, that he made at his suppression hearing and, therefore, Plaintiff's fabrication of evidence claim fails and it should be dismissed.

In any event, and fatal to any allegation that probable cause did not exist here is the fact that the Westchester DA made its own determination that probable cause existed as the assigned Assistant District Attorneys made affirmations to that effect to the state criminal court. *See Doran Decl Ex B* (Westchester DA Affidavit and Memorandum of Law). Accordingly, the actions of Westchester DA clearly sever any liability on the part of the Troopers further warranting summary judgment in their favor. *See Williams v. City of New York,* No. 02 CIV.3693(CBM), 2003 WL 22434151, at *6 (S.D.N.Y. Oct. 23, 2003), aff'd, 120 F. App'x 388 (2d Cir. 2005) (holding "[o]nce a criminal defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution"); *see also Rehberg v. Paulk*, 566 U.S. 356, 371-72 (holding officers "who ha[ve] performed or supervised most of the investigative work in a case may serve as[ ] important witness[es] in the grand jury proceeding and may very much want the grand jury to return an indictment. But such[ ] witness[es], unlike a complaining witness at common law, do[] not make the decision to press criminal charges. Instead,

12

it is almost always a prosecutor who is responsible for the decision to present a case to a grand jury, and in many jurisdictions, even if an indictment is handed up, a prosecution cannot proceed unless the prosecutor signs the indictment… it is the prosecutor, who is [ ] actually responsible for the decision to prosecute") (*citing Albright v. Oliver*, 510 U.S. 266, 279, n.5, (1994) (Ginsburg, J., concurring) (the prosecutor is the "principal player in carrying out a prosecution); *see further Grand Jury Indictment signed by District Attorney Anthony A. Scarpino, Jr. included with 56.1*.

Finally, and to the extent Plaintiff intends to claim that the grand jury indictment was obtained through fraudulent means, Plaintiff cannot establish that occurred here because, again, Plaintiff cannot cite to any evidence which supports this position. Indeed, when Plaintiff attempted to make similar contentions at his suppression hearing, that court specifically rejected those arguments as evident by fact that that court did not dismiss the indictment as Plaintiff requested, but rather permitted the case to proceed, and further permitted the Troopers to testify about the Plaintiff's statements about, and his appearance of being, intoxicated, as well as his failed SFSTs, and his refusals to undergo any chemical breath test. *See generally Doran Decl Ex C* (Troopers McMorrow and Rodriguez's February 27, 2019 testimony).

**B. Troopers McMorrow and Rodriguez did not Initiate Plaintiff's Prosecution**

In this matter, Plaintiff cannot establish that either Troopers McMorrow or Rodriguez initiated the criminal proceedings as there is no evidence that they gave any advice, encouragement, or importuned the Westchester DA's office to prosecute the Plaintiff. *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010) (holding in order to initiate a criminal proceeding the "defendant must do more than report the crime or give testimony," rather, "[h]e must 'play[ ] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'") (*quoting Rohman v. New York City Transit Auth. (NYCTA)*,

215 F.3d 208, 217 (2d Cir. 2000)). Rather, the evidence clearly establishes that Troopers McMorrow and Rodriguez only met with the Westchester DA after the Westchester DA had made its determination to seek a grand jury indictment. *McMorrow Decl ¶ 49*; *Rodriguez Decl ¶ 31*. Prior to that meeting, however, there is no evidence that either Trooper reached out to or spoke with the Westchester DA to encourage or advise them to seek formal charges. *Id.*

While the record does establish that both Troopers testified at Plaintiff's grand jury proceeding and at his subsequent trials, that testimony alone does not establish either Trooper initiated the criminal proceedings. *See Rohman*, 215 F.3d at 217. Moreover, and while the record also establishes that felony complaints were filled out in this matter, it is well established that "it is the filing [of an accusatory instrument] and not the filling out of the felony complaint which commences the prosecution." *People v. Wright*, 228 A.D.2d 709, 709-710 (2d Dept 1996); *Nesbitt v. Cty. of Nassau*, No. 05 Civ. 5513, 2006 WL 3511377, at *2 (E.D.N.Y. Dec. 6, 2006) ("[a] criminal action is commenced by the filing of an accusatory instrument with a criminal court.") (*quoting N.Y. Crim. Proc. Law § 100.05*)). Accordingly, it makes no difference that either Trooper filled out any paperwork in this matter, because filling out such paperwork does not initiate a criminal proceeding. Instead, that paperwork is merely part of the accusatory instrument, that is ultimately filed by the district attorney's office, which commences the proceedings. *See People v. Samuels*, 49 N.Y.2d 218 (1980) ("[A] criminal action commences with the filing of an accusatory instrument…, which includes a felony complaint."); *see further People v. Swan*, 90 A.D.3d 1146, 1148, n1 (3d Dept 2011) ("The arrest did not constitute commencement of a criminal action (*see* CPL 1.20 [17]). Although a felony complaint was drafted by police well before the indictment was obtained, the felony complaint was never filed with the court").

Moreover, and as briefly discussed above, fatal to Plaintiff's malicious prosecution claim

is that the evidence in this matter establishes that it was the prosecutor's own role in initiating and

obtaining the formal charges against the Plaintiff (i.e. the grand jury indictment), which defeats

any purported grounds of "initiating" the prosecution alleged against the Troopers. *See Komlosi v.*

*Fudenberg*, No. 88 CIV. 1792 HBP, 2000 WL 351414, at *11 (S.D.N.Y. Mar. 31, 2000), *adhered*

*to on reconsideration sub nom. Komlosi v. New York State Office of Mental Retardation*, No. 88

CIV. 1792 (HBP), 2000 WL 554226 (S.D.N.Y. May 4, 2000), *aff'd*, No. 01-89 (XAP), 2002 WL

34244996 (2d Cir. 2002) (holding "[t]he exercise of independent judgment by the public

prosecutor and his active role in initiating criminal prosecutions may decrease the likelihood that

a complaining witness will be considered to have 'caused' or 'procured' the prosecution, thus

defeating grounds for liability under this initial prong of the common law standard"); *Williams*,

2003 WL 22434151, at *6.

Accordingly, Plaintiff cannot establish that either Troopers McMorrow or Rodriguez

initiated the criminal proceedings because the evidence clearly establishes that the prosecutor's

own actions of seeking the grand jury indictment, as well as continuing this matter through multiple

stages of litigation, including through two trials, severs any involvement that the Troopers may

have had in Plaintiff's prosecution, thus warranting dismissal of this claim.

### C. Plaintiff Also Cannot Establish Malice on the Part of Either Trooper

Even if Plaintiff could establish that the Troopers initiated the prosecution or did so without

probable cause, which he cannot, Plaintiff's malicious prosecution claim still fails because the

Complaint does not include sufficient, non-conclusory, allegations that establish Troopers

McMorrow or Rodriguez acted with malice. As an element of a malicious prosecution claim,

federal law requires actual malice, *see Washington v. County of Rockland*, 373 F.3d 310, 316 (2d

Cir. 2004), which has been described as "conscious falsity," *Munoz v. City of New York*, 18 N.Y.2d

6, 9 (1966). Therefore, a plaintiff alleging a malicious prosecution claim must also establish that a defendant commenced the criminal proceeding due to a wrong or improper motive, such as something other than a desire to see the ends of justice served. *Rounseville v. Zahl*, 13 F.3d 625, 631 (2d Cir. 1994).

Here, Plaintiff alleges, without sufficient factual allegations, that the "defendants acted with actual malice". *Comp ¶ 49*. Such allegations, however, are precisely the type of "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements" that must be discarded under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, this claim should be dismissed on this basis alone.

To the extent Plaintiff intends to contend that malice is demonstrated because the Troopers purportedly fabricated the evidence and the charges against him, *see generally Dkt. No. 82 pg 2-3*, again, and as discussed above, this allegation is simply not true nor is it supported by the evidence in this matter. *See supra*. Moreover, this allegation is also belied by Plaintiff's acknowledgments, at his suppression hearing, of such evidence existing as well as his justifications for having made various statements, appearing intoxicated, and the obtained results that he did from the three SFSTs administered that evening. Additionally, this claim is further belied by Plaintiff's contentions, at the suppression hearing, where Plaintiff did not argue that such evidence was fabricated or did not occur, as Plaintiff now claims, but rather that such evidence should be suppressed as "fruit of the poisonous tree", which, again, is inapplicable to this matter. *Id.; see also Doran Decl Ex A pg 79-82*; *DiMascio*, 205 F.3d 1322.

Additionally, and to the extent Plaintiff also intends to contend that malice is demonstrated because the "[T]roopers [were] motivated by racial animus toward [the P]laintiff", *see Comp ¶ 1*, such conclusory claims fail to demonstrate malice on the part of either Trooper because there is no

evidence in this matter that plausibly infers any form of racial profiling. Indeed, on the night in question, Plaintiff admits he was driving a rental car, *see Plt Tr. pg 96 ¶ 18-25 included with 56.1*, and there is no evidence that either Troopers McMorrow or Rodriguez were aware that Plaintiff was driving that vehicle prior to pulling it over. Therefore, this claim fails not only as a matter of law but also to demonstrate malice on the part of either Trooper. *See generally Cancel v. Kelly*, No. 13-CV-6007 (JMF), 2016 WL 590230, at *7 (S.D.N.Y. Feb. 11, 2016 ) (dismissing at summary judgment biased-based profiling claim where it was not properly plead and the evidence adduced in discovery did not support the claim); *Ochoa v. Bratton*, No. 16-CV-2852 (JGK), 2017 WL 5900552, at *9 (S.D.N.Y. Nov. 28, 2017) (dismissing claims of profiling based upon race as conclusory and "insufficient to allege a discriminatory purpose"); *see further Iqbal*, 556 U.S. at 676 (holding a plaintiff alleging discrimination must plead and prove that the defendants acted with discriminatory purpose).

Finally, and to the extent Plaintiff attempts to contend that malice is demonstrated because the testimony provided by the Troopers was false, such contentions fail because while an "officer's actions in suppressing exculpatory evidence and influencing witnesses may be relevant to a fair trial claim, [the Supreme Court] is clear that [a] police officer is[ ] entitled to absolute immunity for claims based on [their] actual testimony." *McCaffrey v. City of New York*, No. 11 Civ. 1636 (RJS), 2013 WL 494025, at *4 (S.D.N.Y. Feb. 7, 2013), (*citing Rehberg*, 566 U.S. at 369 ("'[T]his rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution. Were it otherwise, a criminal defendant turned civil plaintiff could simply reframe a claim to attack the preparation instead of the absolutely immune actions themselves."). Therefore, any testimony that Troopers McMorrow or

Rodriguez provided cannot be used as a basis for § 1983 liability and, thus, does not establish malice on the part of either Trooper.

Accordingly, since Plaintiff cannot establish that the Troopers "commenced the prior criminal proceeding due to a wrong or improper motive, [or] something other than a desire to see the ends of justice served," *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502-503 (1978), Plaintiff's malicious prosecution claim fails, and summary judgment should be granted in the Troopers' favor.

### D.  Plaintiff's State Law Malicious Prosecution Claim Fails for the Same Reasons

Since Plaintiff cannot establish his § 1983 claim for malicious prosecution, Plaintiff also cannot establish his state-law malicious prosecution claim either. *See Manganiello*, 612 F.3d at 160-61 (holding to pursue a § 1983 claim for malicious prosecution, the plaintiff must establish "the elements of a malicious prosecution claim under state law"). Here, and as discussed above, *see supra*, the evidence clearly establishes that probable cause, or at least arguable probable cause, existed in this matter. Moreover, the evidence also establishes that neither Troopers McMorrow or Rodriguez initiated the criminal proceedings or did so with malice. Therefore, for the same reasons discussed above, Plaintiff's state-law malicious prosecution claim should be dismissed.

In any event, this Court is vested with the power decline to exercise supplemental jurisdiction over state-law claims and should do so in this matter because Plaintiff's federal claims fail. *See Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003).

### POINT II      PLAINTIFF'S FAIR TRIAL CLAIM FAILS AS A MATTER OF LAW

"A fair trial claim is a civil claim for violations of a criminal defendant's Fourteenth Amendment due process rights." *Fappiano v. City of New York*, 640 F. App'x 115, 118 (2d Cir. 2016) (*citing Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010)). To establish a fair trial claim based on fabrication of evidence, or false information, the plaintiff must prove the "(1)

investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016), (citations omitted).

Here, Plaintiff alleges that he was denied his right to a fair trial because Troopers McMorrow and Rodriguez purportedly fabricated evidence that was provided to the Westchester DA. *See generally Comp 2nd Cause of Action*. As repeatedly discussed throughout this memorandum, Plaintiff's fabrication of evidence claim is meritless and lacks evidentiary support. *See supra*. Accordingly, Plaintiff cannot establish he suffered any deprivation of liberty based upon his purported claims of fabricated evidence.

Even assuming, *arguendo*, that Plaintiff could establish that any evidence was fabricated, which he cannot, Plaintiff's fair trial claim still fails because the evidence for which Plaintiff claims was fabricated (i.e. statements provided in the arrest paperwork or conveyed directly to the Westchester DA), would have never reached a jury, and, therefore, would not have been likely to influence a jury's verdict, because such statements are inadmissible hearsay. *See generally Horvath v. City of New York*, No. 12 CV 6005 RJD JMA, 2015 WL 1757759, at *7 (E.D.N.Y. Apr. 17, 2015) (dismissing plaintiff's denial of right to fair trial claim and holding that allegedly false statements provided to the district attorney's office cannot form the basis of a right to fair trial claim because such statements are inadmissible hearsay that would never reach a jury) (collecting cases). Thus, since Plaintiff only claims that inadmissible hearsay was fabricated and the only way in which such statements could have reached the jury was if the Troopers testified to that effect, which, again, they have absolute immunity for such testimony, *McCaffrey*, 2013 WL 494025, at *4, Plaintiff's denial of a fair trial claim must be dismissed.

In any event, this claim also fails because Plaintiff was concurrently charged with, and convicted of, *VTL § 1180[b]* (speeding). Since Plaintiff cannot challenge the validity of the conviction here, *Heck,* 512 U.S. at 486-87, it is impossible for him to establish that the allegedly fabricated evidence regarding his intoxication resulted in the necessary additional deprivation of his liberty because Plaintiff cannot establish, as he must, that the prosecution of *VTL § 1180[b]* would not have otherwise occurred absent the purportedly fabricated evidence, *see Hoyos v. City of New York*, 999 F. Supp. 2d 375, 393 (E.D.N.Y. 2013) (*quoting Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) ("[A] fair trial claim based on allegations that the police fabricated evidence requires that the plaintiff 'suffer[] a deprivation of liberty as a result' of the alleged fabrication")). Accordingly, this claim fails because it lacks the necessary causal connection between the purportedly fabricated evidence and a deprivation of Plaintiff's liberty. *Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000) (holding that the "deprivation of liberty of which [plaintiff] complains [must] be shown to be the result of [the defendant's] fabrication of evidence"); *Lopez v. City of New York*, 105 F. Supp. 3d 242, 247 (E.D.N.Y. 2015) (holding "[i]n order to have a cognizable claim for denial of the right to a fair trial under § 1983, however, a plaintiff must establish a causal connection between the fabricated evidence and a deprivation of liberty").

To the extent Plaintiff contends that his deprivation of liberty occurred not at his actual jury trial but rather at a concurrent DWI sentencing, *see generally Dkt. No. 82 pg 4* (alleging Plaintiff suffered a deprivation of his liberty as his concurrent DWI sentencing when he was remanded to jail for 60-days), such contentions are without merit. First, Plaintiff does not allege such allegations in the Complaint and, therefore, this claim should not be considered. Even if this allegation were plead, it lacks the necessary causal connection and proximate cause between the

purportedly fabricated evidence and a deprivation of Plaintiff's liberty because, as held by that DWI sentencing court, Plaintiff's sentence was based not only for the DWI charge in this matter but also for an additional DWI charge that was being heard, concurrently, in the Cortlandt Town Court. *See 56.1¶ 52* (citing March 19, 2018 Peekskill City Court Transcript (hereinafter "March 2018 Peekskill Tr."); *see also March 2018 Peekskill Tr.* pg 13 ¶ 2-3 (Peekskill Court acknowledging two DWIs charges have been obtained)*, pg 6 ¶ 12-16* (discussing Plaintiff's two other DWIs, one in May and one which occurred in Cortlandt, in addition to the charges filed in this matter), *pg 11-12 ¶ 25-16* (discussing how Plaintiff received another DWI charge, in addition to this matter, and violated the Peekskill's Court Order by driving outside of Croton on a conditional license). Moreover, this claim further fails because neither Troopers McMorrow or Rodriguez are alleged to have directly provided any purportedly fabricated evidence to, or participated at, that DWI sentencing proceeding. *See generally Morse v. Fusto*, 804 F.3d 538, 547 (2d Cir. 2015) ("[G]overnment officials may be held liable for fabricating evidence through false statements or omissions that are both material and made knowingly").

Accordingly, Plaintiff's fair trial claim fails as a matter of law. See *Caravalho v. City of New York*, No. 13-cv-4174 (PKC)(MHD), 2016 WL 4154273, at *1 (S.D.N.Y. July 29, 2016), *aff'd Caravalho v. City of New York*, 732 F. App'x 18 (2d Cir. 2018) (holding "[d]espite plaintiffs' resounding assertion that defendants' false statements caused plaintiffs 'material harm,' plaintiffs do not show that defendants' false statements actually caused plaintiffs a 'deprivation of liberty.' Plaintiffs' failure to adduce evidence capable of proving that critical element was, and remains, fatal to their fair trial claims.").

**POINT III     PLAINTIFF'S FAILURE TO INTERVENE CLAIM FAILS**

Plaintiff claims that Trooper Rodriguez both maliciously prosecuted him and failed to

intervene in said prosecution. *See Comp generally*. Plaintiff, however, cannot maintain both claims simultaneously because an officer cannot be said to have violated an individual's constitutional rights and then failed to intervene in said violation. *See generally Morgan v. County of Nassau*, 720 F.Supp.2d 229, 240 (E.D.N.Y. 2010) (dismissing claims where defendant was alleged to be a participant in the purported violation and failed to intervene in said violation). Regardless of which claim Plaintiff chooses to maintain, he cannot establish either. *See supra* (establishing the Troopers' entitlement to summary judgment on Plaintiff's malicious prosecution claims).

To the extent Plaintiff intends to maintain his failure to intervene claim, this also fails because he cannot establish that Trooper Rodriguez's (1) failure to act "permitted [a] fellow officer[ ] to violate [Plaintiff's] clearly established statutory or constitutional rights," and (2) that it was "objectively unreasonable for [her] to believe that h[er] fellow officer['s] conduct did not violate those rights." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (citation and quotation marks omitted). As discussed throughout this memorandum, Plaintiff cannot demonstrate that any evidence was fabricated before it was transmitted to the Westchester DA. *See supra*. Additionally, Plaintiff also cannot establish that Trooper Rodriguez was aware of any purported fabrications, he may attempt to claim, which occurred after the arrest paperwork was transmitted to the Westchester DA because the meetings she had with Westchester DA where only between her and the assigned Assistant District Attorneys. *Rodriguez Decl ¶ 31-36*. As such, she was not present for any meetings between the Westchester DA and Trooper McMorrow. *Id.* Accordingly, Plaintiff cannot establish, as he must, that it was "objectively unreasonable for" Trooper Rodriguez to believe Trooper McMorrow had violated any of Plaintiff's rights.

In any event, this claim also fails because Plaintiff cannot establish any constitution violation occurred in this matter. Accordingly, and without a constitutional violation, Plaintiff

cannot succeed on a failure to intervene claim. *See Posner v. City of New York*, No. 11 CIV. 4859

JMF, 2014 WL 185880, at \*8 (S.D.N.Y. Jan. 16, 2014) (*citing Matthews v. City of New York*, 889

F.Supp.2d 418, 443-44 (E.D.N.Y.2012)).

**POINT IV      TROOPERS MCMORROW AND RODRIGUEZ ARE ENTITLED TO QUALIFIED IMMUNITY**

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out

violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3)

even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer

to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady,* 728 F.3d 149, 154

(2d Cir. 2013). In regard to the first prong of this test, it must be determined whether the plaintiff

has alleged facts sufficient to show that the defendants violated a federally-protected right of the

plaintiff. Even if the plaintiff can demonstrate the violation of a federal right, the defendants are

still entitled to qualified immunity if it would not have been clear to a reasonable official, in the

defendants' position, that the actions the defendants took violated the plaintiff's clearly-established

federal rights. *See Pearson v. Callahan,* 555 U.S. 223, 231-32 (2009). The Supreme Court has

stressed that, because qualified immunity is an immunity from suit rather than a defense to liability,

courts should resolve immunity questions at the earliest possible stage in litigation. *Id.* at 232.

An officer is further entitled to qualified immunity from a malicious prosecution and an

abuse of process claim when "a reasonable [] officer in the same circumstances and possessing the

same knowledge as the officer in question could have reasonably believed that probable cause

existed in the light of well established law." *Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir.

2001). "Put another way, an arresting officer will find protection under the defense of qualified

immunity unless no reasonably competent officer could have concluded, based on the facts known

at the time of arrest, that probable cause existed." *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir.

2016) (internal quotation marks omitted). This doctrine is also known as "arguable probable cause." *Rae v. Cty. of Suffolk*, 693 F. Supp. 2d 217, 225 (E.D.N.Y. 2010) (citations omitted); *see also Keith v. City of New York*, 641 F. App'x 63, 65 (2d Cir. 2016) (quoting *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2014) (holding "[a]n officer is entitled to qualified immunity… if he can establish that he had "arguable probable cause". Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.") (alteration and citations omitted)).

To begin, it is without question that Troopers McMorrow and Rodriguez are entitled to absolute immunity for any testimony that they may have provided at any of Plaintiff's criminal proceedings. *McCaffrey*, 2013 WL 494025, at *4. The Troopers are also entitled to qualified immunity, for the additional actions they are alleged to have committed, because, as discussed in greater detail above, *see POINT I(A)*, *supra*, they had probable cause, or at least arguable probable cause, to charge the Plaintiff. Additionally, and even if probable cause, or arguable probable cause, did not exist and the Troopers were mistaken in their belief that probable cause existed, the Troopers are still entitled to qualified immunity because, again, mistakes about probable cause does not vicarate a defendant's entitlement to qualified immunity. *See Anderson*, 283 U.S. 641 (discussing that mistakes about probable cause does not meant that the officers should "be held personally liable").

In any event, Troopers McMorrow and Rodriguez are also entitled to qualified immunity because the state criminal court, who was faced with the issue of whether the actions of the Troopers were lawful, or whether or not they had probable cause, held that those actions were, and that there was probable cause as evident by that court permitting the case to proceed against the

Plaintiff and also permitting the Troopers to testify regarding their observations of the Plaintiff including: his three failed SFSTs, his voluntary statements regarding his consumption of alcohol, and his appearance of being intoxicated. *See generally Doran Decl Ex C*. Therefore, and since it was not clear to a competent judicial body, that has not been found to be invalidated, what, if any, actions the Troopers did that violated any of Plaintiff's clearly established rights, the Troopers are clearly entitled to qualified immunity. *See Richardson v. Selsky*, 5 F.3d 616, 623 (2d Cir. 1993).

Accordingly, since no reasonable officer in the positions of Troopers McMorrow or Rodriguez could have known, or would have believed, that the actions taken by these two violated any of Plaintiff's clearly established rights they are entitled to qualified immunity.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully request that the Court grant them summary judgment, dismissing the action in its entirety.

Dated: White Plains, New York
   March 2, 2022

            Respectfully submitted,

            LETITIA JAMES
            Attorney General
            State of New York
            *Attorney for the Defendants*
            By:

            *S/ John R. Doran*
            John R. Doran
            Assistant Attorney General
            28 Liberty Street
            New York, New York 10005
            (212) 416-8591
            John.Doran@ag.ny.gov