UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

CHRISTOPHER JOHNSON,

                 Plaintiff,               19-CV-6480 (PMH) (AEK)

      -against-

TROOPER ANDREW McMORROW,
TROOPER MARISA RODRIGUEZ, and
JOHN DOES ## 1-10,

                 Defendants.

-------------------------------------------------------------X

## **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

HALE & MONICO LLC
The Woolworth Building
233 Broadway, Suite 820
New York, New York 10279
(646) 858-1180

Of Counsel:

Arthur G. Larkin

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................i

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF MATERIAL FACTS .................................................................... 2

ARGUMENT................................................................................................................ 5

I.    Governing Standards .......................................................................................... 5

II.   There are Questions of Fact Regarding Plaintiff's Malicious Prosecution Claims ..............6

   A.   Viewing The Evidence In the Light Most Favorable to Plaintiff, a Jury Could Find that Defendants Did Not Have Probable Cause ..............................................................7

   B.   Defendants Initiated Plaintiff's Prosecution ...........................................................15

   C.   Defendants Acted With Malice .............................................................................15

   D.   Plaintiff's State Law Malicious Prosecution Claim................................................18

III.  There are Questions of Fact Regarding Plaintiff's Fair Trial Claim.....................................18

IV.  Plaintiff's Failure to Intervene Claim Survives Summary Judgment ...................................22

V.   Defendants Are Not Entitled to Qualified Immunity................................................23

CONCLUSION.......................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994).................................................................... 22,23

*Bellamy v. City of New York*, 914 F.3d 727 (2d Cir. 2019) ...................................................... 5, 14

*Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003) ............................................... 7, 8, 9, 11, 16

*Cameron v. City of New York*, 598 F.3d 50 (2d Cir. 2010) ........................................................... 15

*Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015) ................................................................. 17, 18

*Dufort v. City of New York*, 874 F.3d 338 (2d Cir. 2017 ........................................... 14, 15, 16, 23

*Frost v. N.Y. City Police Dept.*, 980 F.3d 231 (2d Cir. 2020)....................................................... 18

*Garnett v. Undercover Officer*, 838 F.3d 265 (2d Cir. 2016)............................. 18, 19, 20, 21, 23

*Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007)....................................................................... 14

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007) ............................................... 13, 15, 24

*Jovanovic v. City of New York*, 486 Fed. Appx. 149 (2d Cir. 2012) .......................................... 21

*Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010)............................ 6, 7, 8, 9, 15, 16

*McDonough v. Smith*, --- U.S. ---, 139 S. Ct. 2149 (2019)............................................................ 7

*Morgan v. County of Nassau*, 720 F. Supp. 2d 229 (E.D.N.Y. 2010) ......................................... 22

*Morse v. Fusto*, 804 F.3d 538 (2d Cir. 2015) ............................................................................. 18

*O'Neill v. Krzeminski*, 839 F.2d 9 (2d Cir. 1988)....................................................................... 22

*People v. Hageman*, 175 A.D.2d 502 (3d Dept. 1991)................................................................. 9

*People v. Wrenn*, 52 Misc.3d 141(A), 43 N.Y.S.3d 769 (Table) (App. Term 2d Dept. Aug. 1, 2016)............................................................................................................................................ 11

*Rehberg v. Paulk*, 566 U.S. 356, 132 S. Ct. 1497 (2011) ........................................................... 17

*Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123 (2d Cir. 1997) ............................................... 8

*Richardson v. Selsky*, 5 F.3d 616 (2d Cir. 1983) .......................................................... 24

*Rogoz v. City of Hartford*, 796 F.3d 236 (2d Cir. 2015)................................................. 6, 11, 12

*Rohman v. New York City Transit Authority*, 215 F.3d 208, 215 (2d Cir. 2000) .......................... 7

*Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003) ................................................. 7

*Schering Corp. v. Home Ins. Co.,* 712 F.2d 4 (2d Cir. 1983) ................................................ 12-13

*Security Ins. Co. v. Old Dominion Freight Line, Inc.*, 391 F.3d 77 (2d Cir. 2004)...................... 6

*United States v. Weinstein*, 452 F.2d 704 (2d Cir. 1971)........................................................ 10-11

*Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241 (2d Cir. 2004)........................... 5

*Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54 (2d Cir. 2010)................................................ 5

*Ying Li v. City of New York*, 246 F. Supp. 3d 578 (E.D.N.Y. 2017) ........................................... 15

*Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000) ........................................................................ 23

## **Rules**

Fed. R. Civ. P. 56(a) ............................................................................................................. 5

# PRELIMINARY STATEMENT

Despite two directly conflicting versions of events, defendants move for summary judgment dismissing plaintiff's malicious prosecution and fair trial claims. According to plaintiff, the Trooper defendants fabricated evidence that he was intoxicated on the night of February 8-9, 2018, and used that false evidence to initiate criminal proceedings against him and to violate his due process rights. Plaintiff's version of events is supported by his deposition testimony and that of the only non-party deposed in this case, Rodington McLean, who was with plaintiff on the night he was arrested. Plaintiff's evidence, if credited by a jury, would support a verdict in plaintiff's favor, and for this reason he is entitled to a trial.

In support of their motion, defendants ignore plaintiff's version of events (of which they have been aware since the parties exchanged Rule 56.1 Statements in connection with their pre-motion letters to this court, *see* Dkt. 82-1). They assert that, somehow, plaintiff's conduct in the criminal trial – specifically, his motion to suppress some of the evidence that defendants fabricated – mandates that the court exclude or reject his version of events in this Section 1983 lawsuit. But plaintiff had no burden whatsoever in the criminal case and did not put forth any version of events there. He vigorously contested all of the criminal charges and by no means did he accept that defendants' version of events was accurate. Defendants' arguments, as shown below, find no support in the case law and defy common sense.

Defendants also advance arguments that have been squarely rejected by the Second Circuit in multiple areas, yet they fail to apprise this court of the circuit holdings or to make even a cursory attempt at distinguishing them. For example, they assert that defendants' creating false reports is protected by testimonial immunity, an argument that the Second Circuit considered, and rejected, more than six years ago. They assert that plaintiff's conviction of speeding (a

violation) defeats his fair trial claims, but again, the circuit has expressly rejected the argument that a privileged arrest defeats the claim. Their motion, in sum, is legally as well as factually unsupportable, and is a waste of this court's time. It should be denied.

## STATEMENT OF MATERIAL FACTS

On February 9, 2018, in the early morning hours, while driving in the northbound lanes on Route 9, plaintiff Christopher Johnson (hereafter "plaintiff" or "Johnson") was pulled over by defendant State Troopers Andrew McMorrow ("McMorrow") and Marisa Rodriguez ("Rodriguez") near the Montrose exit. (Plaintiff's Local Rule 56.1 Statement of Additional Material Facts (hereafter "Plaintiff 56.1 Stmt."), ¶¶ 1-2; Plaintiff Dep. at 127:9-128:8) He was driving with two passengers, Rodington McLean ("McLean") and another individual. (Plaintiff 56.1 Stmt., ¶ 4; Plaintiff Dep. at 120:5-8; McLean Dep. at 9:12-10:8) They had been working at a jobsite located on Taxter Road in Elmsford, earlier that night, prior to defendants' pulling them over. (Plaintiff 56.1 Stmt., ¶ 5; Plaintiff Dep. at 105:10-106:14; McLean Dep. at 6:21-8:7) They had been decommissioning (taking down) computers at the site from approximately 8:00 or 9:00 p.m. on February 8, to 2:00 a.m., on February 9, 2018. (Plaintiff 56.1 Stmt., ¶ 6; Plaintiff Dep. at 106:4-14 & 110:13-18; McLean Dep. at 5:19-9:17 (generally) & 7:10-22)

At the time Johnson was pulled over, he was driving over the speed limit. (Defendants Rule 56.1 Statement (hereafter "Defendants 56.1 Stmt."), ¶ 56; Complaint, ¶ 48) But he had not done anything else that would have justified the traffic stop. (Plaintiff Dep. at 127:13-20) After the two defendants pulled Johnson's car over, McMorrow got out of the patrol car and approached the driver's side. (Defendants 56.1 Stmt., ¶ 24; McMorrow Dep. at 103:1-16) Recognizing plaintiff because he had interacted with him in the past (*see* McMorrow Dep. at 104:22-105:8), McMorrow called plaintiff's name and forcibly removed him from the vehicle.

(*See* Defendants 56.1 Stmt., ¶ 25; Plaintiff Dep. at 127:21-129:18; McLean Dep. 15:6-13)  He

then handcuffed plaintiff and placed him in the back seat of the patrol car.  (Defendants 56.1

Stmt., ¶ 25; Plaintiff Dep. at 127:21-129:18)  Defendant Rodriguez instructed McLean and the

other individual to get out of the car and stand by the roadside.  She stood there with them.  (*See*

Defendants 56.1 Stmt., ¶ 36; McLean Dep. at 10:16-11:8)  The defendant officers called for a

tow truck which arrived after an hour or so, and took Johnson's car, McLean and the other

individual from the scene.  (Defendants' 56.1 Stmt., ¶¶ 38-39; McLean Dep. 14:17-15:5)

Defendants took Johnson back to the Cortlandt barracks in their patrol car.  (Defendants 56.1

Stmt., ¶ 39; McMorrow Dep. at 134:12-15)

Neither plaintiff nor the other two occupants of the vehicle had drunk any alcoholic

beverages that night.  (Plaintiff 56.1 Stmt., ¶ 8; Plaintiff Dep. at 126:12-18; McLean Dep. at

12:23-13:3, 77:22-79:6)  They did not go to a party in Ossining that night.  (Plaintiff 56.1 Stmt.,

¶ 7; Plaintiff Dep. at 126:16-18; McLean Dep. at 12:20-22)  Neither plaintiff nor McLean told

either officer that they had been to a party or that they had been drinking.  (Plaintiff 56.1 Stmt.,

¶¶ 9-10; Plaintiff Dep. at 126:12-18; McLean Dep. at 12:15-13:3; Johnson Decl., ¶ 3)  At the

time, plaintiff had a conditional driver's license that allowed him to drive to and from work.

(Plaintiff 56.1 Stmt., ¶ 17; Plaintiff Dep. at 92:5-18)

Although plaintiff had not been drinking and was not intoxicated, McMorrow placed

him under arrest at the scene and charged him with multiple crimes including felony DWI, in

violation of VTL § 1192(3), and Aggravated Unlicensed Operation of a Motor Vehicle, in

violation of VTL § 511(3)(a).  (Plaintiff 56.1 Stmt., ¶ 12; Felony complaints [Bates ##

DEFENDANTS 121, 122]; McMorrow Dep. at 140-41)  McMorrow signed the two felony

complaints and attested to the truthfulness of the charges.  (*Id*.)  Both felony charges were based

on the purported fact that Johnson was operating a motor vehicle while intoxicated. (Felony complaints [Bates ## DEFENDANTS 121, 122]) Based on the information McMorrow provided to the District Attorney, plaintiff was also charged with Driving While Impaired, as a misdemeanor. (Larkin Decl., Exhibit 7 [Indictment])

At the barracks, McMorrow and Rodriguez prepared an incident report which stated, among other things, that (i) McMorrow "detected the strong odor of an alcoholic beverage emanating from [Johnson's] breath" after defendants pulled him over, (ii) Johnson had "watery, bloodshot eyes with droopy eyelids" and that his speech was "slow, thick and slurred," and (iii) Johnson stated that he had consumed alcohol "at a party in Ossining" and finished his last drink twenty minutes earlier. (Plaintiff 56.1 Stmt., ¶ 11; Incident Report [Bates ## DEFENDANTS 112-14]; McMorrow Dep. at 121-22) McMorrow and Rodriguez both knew that the incident report would be forwarded to the District Attorney for purposes of prosecuting the charges against plaintiff. (Plaintiff 56.1 Stmt., ¶¶ 13-15; McMorrow Dep. at 145:13-146:15; Rodriguez Dep. at 62:13-18) Because plaintiff was not intoxicated, and because he never stated that he consumed alcohol at a party in Ossining or that he had been drinking, the incident report and the two felony complaints were materially false.

After Plaintiff's arrest was processed, he was taken to Cortlandt Court to be arraigned. (Defendants 56.1 Stmt., ¶ 49; Plaintiff Dep. at 135:8-12) The court set bail at $5,000, and plaintiff was remanded to the Westchester County jail for four days until he made bail on February 13, 2018. (Defendants 56.1 Stmt., ¶¶ 49-50; Plaintiff Dep. at 135:8-25; Westchester County jail record [Bates No. 4]) Subsequently, Plaintiff was tried on the felony charges twice: The first trial ended in a hung jury, and the second resulted in an acquittal on all charges except for speeding for which he was fined. (Plaintiff 56.1 Stmt., ¶ 16; Plaintiff Dep. at 141:3-142:8)

At the time of plaintiff's arrest, he was awaiting sentence on a misdemeanor charge to which he had pled guilty in Peekskill City Court. Because of plaintiff's arrest on the felony DWI charges (which McMorrow and Rodriguez had fabricated), the Peekskill court remanded plaintiff to the Westchester County jail, on the grounds that his arrest violated paragraph 16 of the Misdemeanor Conviction Waiver of Rights that he had signed when he pled guilty. (Plaintiff 56.1 Stmt., ¶ 18; Larkin Decl., Exhibit 4 [Peekskill transcript 3/19/18], at 15:10-16:15; Plaintiff Dep. at 137:5-140:11; Larkin Decl., Exhibit 5 [Misdemeanor Waiver of Rights form]) Plaintiff was incarcerated thereafter from April 2, 2018, through May 29, 2018. (Plaintiff 56.1 Stmt., ¶ 18; Larkin Decl., Exhibit 3 [Westchester County jail record, Bates 34])

## ARGUMENT

### I.     Governing Standards

"Summary judgment may be granted only 'if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Bellamy v. City of New York*, 914 F.3d 727, 744 (2d Cir. 2019) (citing Fed. R. Civ. P. 56(a)). Stated differently, summary judgment is appropriate only when, "in resolving all ambiguities and drawing all permissible factual inferences in favor of the non-moving party ... the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id*. (citation and brackets omitted). "The role of the court in deciding a motion for summary judgment is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried[.]" *Wilson v. Northwestern Mut. Ins. Co*., 625 F.3d 54, 60 (2d Cir. 2010) (citation and internal quotes omitted).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). Moreover, "[i]f, as

to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). "In reviewing the evidence and the inferences that may reasonably be drawn, the court may not make credibility determinations or weigh the evidence[.]" *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015). Instead, "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. (citations omitted).

As shown below, plaintiff's and McLean's testimony, if believed by a jury, would establish that plaintiff was not drinking alcoholic beverages on the night he was pulled over and charged with two DWI-related felonies. Their testimony, if credited, would also establish that the two defendants fabricated evidence that Plaintiff was intoxicated and told them that he was "at a party in Ossining" where he had been drinking. Plaintiff's proof is sufficient to allow this case to be presented to a jury. Defendants' motion is baseless and should be denied.

## II.      **There are Questions of Fact Regarding Plaintiff's Malicious Prosecution Claims**

In order to establish this claim (*see* Dkt. 1 [Complaint], ¶¶ 53-60, 69-75), plaintiff must "show a violation of his rights under the Fourth Amendment … [and] establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted). These elements are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id*. (citations omitted).

Defendants do not dispute that plaintiff can establish a Fourth Amendment violation here, viz., "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *See Rohman v. New York City Transit Authority*, 215 F.3d 208, 215 (2d Cir. 2000). They concede that plaintiff was detained at the Westchester County jail for four days after he was arraigned. (Defendants 56.1 Stmt., ¶¶ 49-50; Plaintiff 56.1 Stmt., ¶ 18) Nor do defendants dispute that plaintiff's acquittal on the felony charges (and a related misdemeanor) satisfies the favorable termination element with respect to those charges. *See McDonough v. Smith*, --- U.S. ---, 139 S. Ct. 2149, 2160 n.10 (2019) (an "acquittal [is] unquestionably a favorable termination"). Instead, defendants assert that plaintiff cannot establish the first, third and fourth elements of the claim, but as shown below they are incorrect.

A. <u>**Viewing The Evidence In the Light Most Favorable to Plaintiff, a Jury Could Find that Defendants Did Not Have Probable Cause**</u>

"Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Manganiello*, 612 F.3d at 161 (citation omitted). "The existence of probable cause is a complete defense to a claim of malicious prosecution in New York, … and indictment by a grand jury creates a presumption of probable cause." *Id*. (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). "The presumption is rebuttable, and may be overcome by evidence establishing that the police witnesses have not made a complete and full statement of facts ... that they have misrepresented or falsified evidence ... or otherwise acted in bad faith." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) (citation omitted).

"Where there is some indication in the police records that, as to a fact crucial to the existence of probable cause, the arresting officers may have lied in order to secure an

indictment, and a jury could reasonably find that the indictment was secured through bad faith or perjury," the presumption may be rebutted. *Manganiello*, 612 F.3d at 161 (citing *Boyd*, 336 F.3d at 77). This is because "a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable corruption of the truth-seeking function of the trial process." *Id*. (citing *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir. 1997)).

Plaintiff's version of events, supported by his own testimony and that of Rodington McLean, is that he was not drinking on the night he was arrested, and that he never said he was drinking or at a "party in Ossining" that night. Instead, he and McLean (and another individual) had been working all night decommissioning computers on Taxter Road in Elmsford. If the jury believes Plaintiff's version of events, the jury could easily infer that McMorrow and Rodriguez both "lied in order to secure an indictment," *see Manganiello*, 612 F.3d at 161, and/or that they "misrepresented or falsified evidence," *see Boyd*, 336 F.3d at 76. In these circumstances, the presumption of probable cause is overcome. *See, e.g., Boyd*, 336 F.3d at 76-77 (denying summary judgment where plaintiff's evidence supported the inference that police witnesses lied in their reports about where they arrested plaintiff).

Viewed in the light most favorable to plaintiff, the evidence also supports the inference that neither McMorrow nor Rodriguez had probable cause to charge plaintiff with felony DWI or Aggravated Unlicensed Operation of a Motor Vehicle. Both charges were based on the purported ground that Johnson was driving while intoxicated.[1] (Larkin Decl., Exhibit 1 [Felony complaints, DEFENDANTS 121, 122]) Yet, both Johnson and McLean testified that neither had been drinking that night and that Johnson was not intoxicated. If the jury credits plaintiff's version of events, then it could find that McMorrow could not have detected any odor of

---

[1] The misdemeanor charge (*see* Larkin Decl., Exhibit 7), based on the same allegations, was also false.

alcohol on Johnson's breath; that McMorrow either did not administer any field sobriety tests as

plaintiff contends (*see* Defendants' 56.1 Stmt., ¶¶ 32-33; Plaintiff Dep. at 130:3-5; McLean

Dep. at 14:4-10 & 55:2-56:7), or that if he did, Johnson passed them; and that Johnson never

said that he was "at a party in Ossining" or had been drinking that night, because in fact he was

not at a party and had not been drinking.  If the jury credits plaintiff's version of events, it could

find that there was no evidence "to warrant a person of reasonable caution in the belief" that

Johnson committed the crimes he was charged with.  *See Manganiello*, 612 F.3d at 161.

In support of their motion, defendants rely on arguments that are factually wrong and

legally unsupported.  <u>First</u>, defendants assert that because plaintiff was speeding, they were

justified in pulling his car over and to "begin suspecting" that plaintiff "might" have been

intoxicated.  (Defendants' Br., at 7-8)  Assuming <u>arguendo</u> that plaintiff was speeding, that fact

would not constitute probable cause to believe he was intoxicated.  *Cf. People v. Hageman*, 175

A.D.2d 502, 504 (3d Dept. 1991) (traffic violation insufficient to support conviction for DWI

even where defendant consumed alcohol prior to arrest).  Defendants do not cite any authorities

holding that where an officer "begins to suspect" that a defendant "might" be guilty of crime,

the test for probable cause is satisfied.  *Cf. Boyd*, 336 F.3d at 76-78.

<u>Second</u>, relying exclusively on their own version of events and ignoring plaintiff's, they

assert that McMorrow had probable cause to believe that plaintiff was driving while intoxicated

(Defendants' Br., at 7-9).  Defendants assert that the following facts are "undisputed" and

support probable cause:  (i) Johnson handed McMorrow his entire wallet when McMorrow

asked for his identification; (ii) McMorrow saw that Johnson's eyes were "glassy and watery,"

his speech was "slow and heavy" and he detected the odor of alcohol on Johnson's breath; (iii)

Johnson admitted that he had been drinking at a party approximately twenty minutes earlier;

(iv) McMorrow saw that plaintiff was "unsteady on his feet" as he got out of the car; and (v) he administered field sobriety tests which Johnson failed.  (Defendant's Br., at 8-9)

Every single one of the foregoing "facts" is disputed, however.  According to Johnson, defendant McMorrow approached the driver's side of the car and "didn't ask for [any] license or registration" (Plaintiff Dep. at 129:7-10), suggesting that McMorrow's account of Johnson handing him his wallet is false.  Johnson also denies drinking that night and denies that he went to a party in Ossining, and his version of events is corroborated by non-party McLean, a passenger in the car (Plaintiff Dep. at 126:12-18; McLean Dep. at 10:16-13:3).  If the jury credits plaintiff's version of events, it would be free to reject McMorrow's claim that he detected alcohol on Johnson's breath, or that his speech was slow and heavy, or that his eyes were glassy and watery, or that he was unsteady on his feet, or that he told McMorrow he had been drinking at party.  Finally, Johnson denies that McMorrow ever administered field sobriety tests and McLean does not recall seeing McMorrow administer any such tests (Plaintiff Dep. at 130:3-5; McLean Dep. at 14:4-10 & 55:2-56:7).  If the jury credits this testimony, then it could find that McMorrow lied about the field sobriety tests too.

If the jury credits Plaintiff's and McLean's testimony, then it could find that McMorrow and Rodriguez created a false incident report, which stated among other things that plaintiff told McMorrow he was "at a party in Ossining" where he had been drinking.  (Larkin Decl., Exhibit 2 [Incident report, DEFENDANTS 112-14])  If the jury believes that McMorrow and Rodriguez lied in their report, it could also infer that they lied about the other material facts that they claim support probable cause.  *See United States v. Weinstein*, 452 F.2d 704, 713-14 (2d Cir. 1971) (under the ancient maxim of "falsus in uno falsus in omnibus" the jury may conclude that a witness who lies once "is capable of any amount of falsification, and to make it no more

than prudent to regard all that he says with strong suspicion, and to place no reliance on his mere statements") (citation omitted).

Third, defendants contend that Johnson told a non-party Trooper "that he was attempting to hide his intoxication." (Defendants Br., at 9) As evidentiary support, they cite the hearing testimony of defendant Rodriguez who claimed that she heard Johnson make the incriminating statement to the other Trooper. (*See id.*) Plaintiff denies that he ever made the statement, however (Johnson Decl., ¶ 4), which means that the question whether he did so is disputed. The "credibility determination" necessary to resolve the issue is a "jury function," not one for the court on this motion. *See Rogoz*, 796 F.3d at 245. Furthermore, because the statement was purportedly made after Johnson's arrest in violation of his constitutional rights, the statement was inadmissible and does not support probable cause. *Cf. Boyd*, 336 F.3d at 77 (denying summary judgment where criminal prosecution was based on plaintiff's alleged statement after he was arrested, because the statement "would clearly not be admissible and then there would be no probable cause to believe the prosecution could succeed").

Fourth, defendants assert that plaintiff's refusal to take the breathalyzer test after he was taken to the Cortlandt barracks supports an inference of "consciousness of guilt." (Defendants Br., at 9) Plaintiff denies that he was ever asked specifically to take a "breathalyzer" (Plaintiff Dep. at 133:16-23), which sets up a question of fact for the jury.[2] *See Rogoz*, 796 F.3d at 245. But even if plaintiff refused the breathalyzer, this fact is not enough to support probable cause to charge him with any crimes. *Cf. People v. Wrenn*, 52 Misc.3d 141(A), 43 N.Y.S.3d 769 (Table) (App. Term 2d Dept. Aug. 1, 2016) (courts have "repeatedly held that the refusal to submit to a breath test pursuant to Vehicle and Traffic Law § 1194(1)(b) is not a cognizable

---

[2] Trooper Rodriguez, who claims that she read the standard warnings to plaintiff prior to his alleged refusal, admits that she did not use the word "breathalyzer" when she did so. (Rodriguez Dep. at 55:7-19)

offense") (citing cases). Because all of the other facts on which defendants rely are disputed, except that plaintiff was speeding, defendants cannot meet their burden of showing that, as a matter of law, there was probable cause to prosecute plaintiff for any DWI-related crimes.

Fifth, defendants assert that the grand jury indictment is sufficient to establish probable cause on the facts presented here. Despite Plaintiff's and McLean's deposition testimony, defendants argue that Plaintiff's version of events is "meritless" and is "not supported by the evidence." (Defendants Br., at 10) They assert that, by his conduct in the criminal case – specifically, at the pre-trial suppression hearing – plaintiff supposedly accepted defendants' version of events as the truth. They isolate questions that his defense counsel asked on cross-examination and arguments that she made, and assert that her words somehow constitute proof that plaintiff "did not argue that he was not intoxicated," or that he "did not contend that [field sobriety tests] were not administered" and merely "offered … explanations for why he failed those tests," or that he "did not contend he never made" the statements defendants attributed to him. (Defendants' Br., at 11-12) They appear to argue that by moving to suppress some of the evidence prior to trial, Johnson conceded that all of it existed.

Defendants' argument is nonsensical. Johnson vigorously contested the criminal charges and went to trial. He was acquitted on every charge except for speeding. As a defendant, Johnson had no burden in the criminal case to put forth any version of events, and he exercised his Fifth Amendment right not to testify. (Plaintiff Dep. at 141:6-142:2) He disputed every aspect of the People's case through the means available to him, including by moving to suppress evidence. Defendants' argument that Johnson's conduct in the criminal case supports the inference that he accepted defendants' version of events is illogical and baseless, not "reasonable" or "legitimate." *Rogoz*, 796 F.3d at 245; *see also Schering Corp. v. Home Ins.*

*Co.*, 712 F.2d 4, 9 (2d Cir. 1983) (summary judgment must be denied where non-movant "propounds a reasonable conflicting interpretation of a material disputed fact").

Defendants cite no authorities holding that by moving to suppress evidence, a criminal defendant concedes the existence of that evidence such that he cannot thereafter maintain a Section 1983 lawsuit alleging that the evidence was fabricated by the police. Our research has found no such authorities – because none exist. To the extent the criminal court held that some of Johnson's "statements" (which he denies making), as well as other evidence, could be admitted at trial, those holdings have no force or effect in this civil rights lawsuit. "New York courts have held that facts determined in a pretrial suppression hearing cannot be given preclusive effect against a defendant subsequently acquitted of the charges." *Jenkins v. City of New York*, 478 F.3d 76, 92 (2d Cir. 2007) (citation omitted). The rule is "predicated on the defendant's lack of an opportunity to obtain review of an issue decided against him," because an acquitted defendant has nothing to appeal.[3] *See id.*

Finally, defendants' argument is belied by the contents of Johnson's moving papers in the criminal case. Defendants assert that "Plaintiff did not argue that he was not intoxicated" (Defendants Br., at 11), but in support of his motion to suppress, Johnson's defense counsel stated that Johnson "maintains that he was not intoxicated," that he "never violated any provisions of the Vehicle and Traffic Law" and "was never observed in an intoxicated condition." (Larkin Decl., Exhibit 6, ¶¶ 3, 6) They also assert that Johnson did not deny failing the field sobriety tests but only "offered additional explanations for why he failed those tests"

---

[3] Plaintiff's speeding conviction does not change the analysis. The criminal court's findings on the suppression motion concerned the DWI-related charges, not the speeding charge. While defendant filed a notice of appeal concerning his speeding conviction, the appeal was never perfected or decided, and the same rule applies if "there has been no review [of the criminal court findings], even though an appeal was taken." *Jenkins*, 478 F.3d at 91 (citations omitted).

(Defendants' Br., at 11), but again they are wrong.  Johnson's motion stated that he "performed all of the coordination tests satisfactorily" (Larkin Decl., Exhibit 6, ¶ 6), and at his deposition he denied that McMorrow ever administered any such tests.  (Plaintiff Dep. at 130:3-5)  To the extent that there is any conflict between Johnson's counsel's affirmation in the criminal case and his deposition testimony, the court should draw the inference favorable to Johnson, *see Bellamy*, 914 F.3d at 744:  By either version, he has never admitted that he failed the field sobriety tests.  Defendants assert that by moving to suppress the disputed statements, Johnson somehow "acknowledged" that the statements "existed," but throughout the motion papers, his counsel described the statements as "alleged" to have been made, or as "allegedly" made, and at no time did defense counsel concede that Johnson actually made any of the statements, or that the facts were as the defendants "alleged."  (Larkin Decl., Exhibit 6, ¶¶ 3-5, 9)

Sixth, defendants argue that the District Attorney "made its own determination that probable cause existed," and that this determination "sever[s] any liability on the part of the defendants."  (Defendants Br., at 12)  As shown above, however, if the jury credits plaintiff's version of events then it could find that the Trooper defendants misled the prosecutors by misrepresenting evidence and creating false reports.  It is well-settled that "[i]f the District Attorney's office pursued its prosecution … after it was deliberately misled by the Defendants, then the decision to prosecute does not interrupt the chain of causation" or sever the defendants' liability.  *Dufort v. City of New York*, 874 F.3d 338, 352 (2d Cir. 2017); *see Higazy v. Templeton*, 505 F.3d 161, 177 (2d Cir. 2007) (in Section 1983 lawsuit, "the chain of causation need not be considered broken if [the defendant officer] deceived the subsequent decision maker … or could reasonably foresee that his misconduct would contribute to an independent decision that results in a deprivation of liberty") (citations omitted).

Defendants, again, assert that the criminal court's denial of Johnson's motion to dismiss the indictment somehow absolves them of liability (Defendants Br., at 13), but again, the criminal court's findings are not entitled to preclusive effect here, *see Jenkins*, 478 F.3d at 92.

**B.      Defendants Initiated Plaintiff's Prosecution**

Defendants assert that they did not "initiate" the prosecution but rather, that the District Attorney did so.   In support, they cite boilerplate from decisions noting that in the normal course, the District Attorney, not the police, prosecutes cases.   (Defendants' Br., at 13-15)

However, "[t]he 'initiation' requirement is met when the plaintiff can establish that police officers forwarded statements to a prosecutor without sharing that the statements were suspect." *Dufort*, 874 F.3d at 353 (citing *Manganiello*, 612 F.3d at 163).   "Thus, a plaintiff can satisfy the initiation requirement if he can establish that an indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."   *Id*. (citation and internal quotes omitted).   Moreover, "[a]n active role in [the] prosecution is inferred when a defendant … signed a felony complaint." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 605 (E.D.N.Y. 2017 (citing *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010)).   It is not disputed that McMorrow signed both felony complaints, which is enough to satisfy the initiation requirement.   For the same reasons as those discussed in Part II-A, above, the evidence is sufficient to raise triable issues of fact as to whether defendants initiated plaintiff's prosecution.   *See id*.

**C.      Defendants Acted With Malice**

Defendants assert that the record does not reveal any questions of fact with regard to malice.   They state that "federal law requires actual malice … which has been described as conscious falsity."   (Defendants Br., at 15 (citations omitted))   They argue, again, that plaintiff

conceded at the suppression hearing that all of the evidence of his purported guilt existed, and fail to apprise the court of Johnson's or McLean's deposition testimony. (*Id*. at 16)

Defendants' arguments should be rejected for two main reasons. Under, as shown in Part II-A above, plaintiff has demonstrated that there are substantial questions of fact as to whether defendants created false reports concerning their observations of plaintiff, and purported statements made by plaintiff, on the night he was arrested. If the jury credits plaintiff's evidence, it could reasonably infer that defendants' conduct evinces "conscious falsity." *See, e.g., Dufort*, 874 F.3d at 354 ("Malice may be proved inferentially because it is a matter of the defendant's subjective mental state, revolves around facts usually within the defendant's knowledge and control, and rarely is admitted"); *cf. Manganiello*, 612 F.3d at 163 (evidence that defendants acted "in reckless disregard of the rights of the plaintiff" sufficient to establish malice). Second, as shown above, there is an issue of fact concerning probable cause, and for this reason "the element of malice also becomes an issue of material fact … [because] [a] lack of probable cause generally creates an inference of malice." *Boyd*, 336 F.3d at 78.

Defendants argue that there is insufficient evidence of "racial animus" to support any inference of malice (Defendants Br., at 15-16), but in light of the other evidence adduced by plaintiff, this argument is surplusage and the court should disregard it. And their argument that malice cannot be proven by their trial testimony because they are entitled to testimonial immunity (*id*. at 17-18) is inapplicable here and should be rejected. Plaintiff's claims are not based exclusively on McMorrow's and Rodriguez' trial or grand jury testimony, but rather, are based on their falsifying evidence that he was intoxicated and creating false reports attributing to him statements that he did not make (*see* Part II-A, above). Defendants' unlawful conduct occurred outside the courtroom, independent of their testimony at trial or grand jury.

In *Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015), the Second Circuit addressed, and rejected, the argument defendants now advance. In *Coggins*, plaintiff alleged that the defendant officers falsely reported to the District Attorney that, after plaintiff was stopped for a purported traffic violation, he fled the scene and dropped a gun as he was running. The officers charged him with criminal possession of a weapon despite knowing that this charge was false, and one of the defendants created a false report reflecting the officers' alleged observations at the scene. Both officers moved to dismiss the complaint, arguing that the Section 1983 claims were based on their grand jury testimony for which they were entitled to absolute immunity. *Id.* at 112. Rejecting the claim of immunity, the circuit squarely held that if "the plaintiff can make out the elements of his § 1983 claim without resorting to the grand jury testimony," then the claim "exists independently of the grand jury testimony" and absolute immunity is not a bar. *Id.* at 113 (citing *Rehberg v. Paulk*, 566 U.S. 356, 132 S. Ct. 1497, 1506 (2011)). The question presented was one of "first impression" in the circuit. *See id.*

The court noted that plaintiff's claims were based on facts independent of the officers' testimony in grand jury, including their "police reports," the statements of another officer demonstrating that the reports were false, one defendant's "knowledge of the falsity of [his co-defendant's] police report," and one defendant's "statements to the district attorney." *Id.* at 113. "All of these facts existed before [defendant] Buonora's … grand jury testimony and are independently actionable under § 1983 such that [plaintiff] would be able to prove his claims without ever relying on the officers' grand jury testimony." *Id.* Here, similarly, plaintiff's claims are based on defendants' false incident report which they both knew would be forwarded to prosecutors, as well as McMorrow's fabrication of evidence that plaintiff was intoxicated and signing two false felony complaints, all of which "laid the groundwork for [plaintiff's]

indictment." *See id.* Plaintiff's claims exist "independently" of defendants' testimony in grand jury or at trial, and for this reason neither defendant is entitled to testimonial immunity.[4]

### D. Plaintiff's State Law Malicious Prosecution Claim

As noted above, the elements of a state law malicious prosecution claim are essentially the same as those of the federal claim. *See Manganiello*, 612 F.3d at 161. For the reasons set forth in Parts II-A, B and C, above, there are questions of fact concerning the elements of plaintiff's state law malicious prosecution claim, as well, and we submit that the court should deny defendants' motion to dismiss that claim for the same reasons.

## III. There are Questions of Fact Regarding Plaintiff's Fair Trial Claim

"The Due Process Clause guarantees a criminal defendant's right to a fair trial, … [and] [t]his right is violated when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors." *Frost v. N.Y. City Police Dept.*, 980 F.3d 231, 244 (2d Cir. 2020) (citations and internal quotes omitted). "Such violations are redressable in an action for damages under 42 U.S.C. § 1983 … [and] unlike a malicious prosecution claim, a Section 1983 claim for the denial of a right to a fair trial based on an officer's provision of false information to prosecutors can stand even if the officer had probable cause to arrest the Section 1983 plaintiff." *Id.* (citing *Garnett v. Undercover Officer*, 838 F.3d 265, 277-78 (2d Cir. 2016)); *see also Morse v. Fusto*, 804 F.3d 538, 547 (2d Cir. 2015) ("[G]overnment officials may be held liable for fabricating evidence through false statements or omissions that are both material and made knowingly").

---

[4] In support of their arguments, defendants inexplicably rely on an unreported district court decision that pre-dates *Coggins* (Defendants Br., at 17-18), and fail to apprise this court of the Second Circuit's holding in *Coggins* which is controlling.

In order to establish the claim, plaintiff must show that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett*, 838 F.3d at 279 (citations omitted). Plaintiff satisfies these requirements if he can demonstrate that "the information fabricated is the officer's own account of his or her observations of alleged criminal activity, which he or she then conveys to a prosecutor." *Id.* at 274. Significantly, even if the arrest is supported by probable cause, and would therefore "account[] for at least some portion of the deprivation of liberty," this fact alone "is insufficient to negate the fifth element of a fair trial claim[.]" *Id.* at 277. "[P]robable cause, which is a Fourth Amendment concept, should not be used to immunize a police officer who violates an arrestee's non-Fourth Amendment constitutional rights." *Id.* (citation omitted).

Plaintiff has adduced sufficient evidence that, if credited by a jury, would establish his fair trial claim. He has shown that McMorrow and Rodriguez fabricated information about what they "claimed to have seen or heard [him] say," *see Garnett*, 838 F.3d at 279, which was likely to influence a jury's verdict, and forwarded that information to the prosecutors. As a result of their actions, Johnson was arraigned and remanded to the county jail where he was detained for four days – facts that defendants do not dispute. (*See* Plaintiff 56.1 Stmt., ¶ 18)

Defendants' arguments to the contrary are unavailing. First, they repeat the argument that plaintiff's claims "lack[] evidentiary support," again ignoring plaintiff's and McLean's deposition testimony. For the reasons discussed in Part II-A, above, this argument is baseless.

Second, they assert that plaintiff's claim "fails" because the fabricated evidence – defendants' incident report, their claimed observations of plaintiff and their statements repeating what plaintiff, allegedly, said that night – "would never have reached a jury …

because such statements are inadmissible hearsay." (Defendants Br., at 19) This argument is directly contrary to the Second Circuit's holding in *Garnett* that a police officer who creates "a false account of something the officer claimed to have seen or heard the defendant say, which he forwarded to prosecutors and to which he would be expected to testify at trial" can be liable on this claim. *See Garnett*, 838 F.3d at 279. McMorrow and Rodriguez undisputedly forwarded to prosecutors their account of what happened on February 9, 2018 (*see* McMorrow Decl., ¶¶ 46, 49; Rodriguez Decl., ¶¶ 31-32, 34), which plaintiff alleges is false. Both defendants were "expected to testify at trial" to these false accounts, and in fact did so.

In support of their arguments that the false evidence constituted hearsay, defendants rely on an unreported district court decision that pre-dates *Garnett* (Defendants Br., at 19), and although they cite *Garnett* in their brief they fail to apprise this court of its main holding. Defendants also argue that "the only way in which [their] statements could have reached the jury was if the Troopers testified to that effect," and that for this reason they are entitled to testimonial immunity (*id*.), but again, they fail to apprise this court of the Second Circuit's holding in *Coggins* or the holding of *Garnett* that fabricated evidence "to which [defendants] would be expected to testify at trial" is sufficient to support the claim.

Third, defendants argue that because plaintiff was found guilty of speeding (only), he cannot establish "that the allegedly fabricated evidence regarding his intoxication resulted in the necessary additional deprivation of liberty[.]" (Defendants Br., at 20) Defendants assert that plaintiff's post-arrest deprivation of liberty (four days' detention in the county jail) was legally justified by his arrest for speeding, and therefore, that plaintiff cannot establish this element of the fair trial claim. (*See id*.)

But the Second Circuit has expressly rejected the argument that any "additional" deprivation of liberty is required in cases where the officers had probable cause to arrest the plaintiff.  In *Garnett*, defendants argued that in order to prove a fair trial claim, the plaintiff must show "that the falsified information [is] the *only* reason the plaintiff suffered a deprivation of his liberty, such that a privileged arrest is sufficient to negate this element" of the claim. *Garnett*, 838 F.3d at 277 (emphasis in original).  Rejecting this argument, the circuit held that the setting of bail may well depend on the "prosecutor's and magistrate's assessments of the strength of the case, which in turn may be critically influenced by fabricated evidence," and reiterated the rule that probable cause is not a defense to a fair trial claim.  *Id.* at 277-78 (citing *Jovanovic v. City of New York*, 486 Fed. Appx. 149 (2d Cir. 2012)).

*Garnett* makes clear that plaintiff is not required to show that the fabricated evidence was the "*only* reason [he] suffered a deprivation of liberty."  *See id.* at 277 (emphasis in original).  Moreover, it is doubtful that plaintiff would have been remanded to the county jail on $5,000 bail just for a speeding ticket, and as *Garnett* recognizes, the setting of bail can be "critically influenced" by the fabricated evidence, as it appears to have been in this case.

Fourth, defendants assert that plaintiff's incarceration in the county jail in connection with his Peekskill case cannot satisfy the "deprivation of liberty" requirement for the fair trial claim, but we submit that they are wrong.  The facts demonstrate that the false charges caused the judge in that case to remand plaintiff for, allegedly, violating paragraph 16 of the Misdemeanor Conviction Waiver of Rights that he signed when he pled guilty.  (Plaintiff 56.1 Stmt., ¶ 18; Larkin Decl., Exhibit 4 [Peekskill City Court Tr., at 14:15-15:24], Exhibit 5)  At a minimum, plaintiff has presented evidence that, if credited by the jury, could support this conclusion, which means that summary judgment should not be granted on this basis.

## IV. Plaintiff's Failure to Intervene Claim Survives Summary Judgment

"An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know … that a citizen has been unjustifiably arrested … or … that any constitutional violation has been committed by a law enforcement official." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Viewed in the light most favorable to plaintiff, the evidence shows that defendant Rodriguez was present when McMorrow claimed to have observed plaintiff in an intoxicated state and knew (or should have known) that plaintiff was not intoxicated, and that she failed in any way to intervene when McMorrow signed two felony complaints charging plaintiff with two DWI-related felonies. According to plaintiff's version of events, Rodriguez had "a realistic opportunity to intervene to prevent the harm from occurring," *see id*. (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)), and her failure to do so is actionable.

In support of their motion, defendants argue that plaintiff "cannot maintain both claims simultaneously because an officer cannot be said to have violated an individual's constitutional rights and then failed to intervene in said violation." (Defendants Br., at 22) They rely on *Morgan v. County of Nassau*, 720 F. Supp. 2d 229 (E.D.N.Y. 2010), where the court dismissed the plaintiff's failure to intervene claim because he brought the claim against two defendants, one of whom was alleged to have used excessive force against him (riding a horse that stepped on plaintiff's head), and the other who was in the vicinity but was not alleged to have had any opportunity to intervene. *See id*. at 240. The failure to intervene claim could not be brought against the officer who committed the discrete act that violated plaintiff's rights. *Id*.

*Morgan* is distinguishable, however, because the facts here support the inference that Rodriguez is both independently liable on plaintiff's claims and also liable for failing to

intervene. Rodriguez directly participated in creating the incident report regarding plaintiff's arrest, which included the false information that McMorrow observed that plaintiff was intoxicated and that plaintiff said he was at a party in Ossining where he had been drinking. (McMorrow Dep. at 121:23-122:11) Her direct participation in creating the false report is sufficient to defeat summary judgment on plaintiff's malicious prosecution and fair trial claims. *See Dufort*, 874 F.3d at 353 (malicious prosecution); *Garnett*, 838 F.3d at 277-79 (fair trial). Her failure to take steps to prevent McMorrow from falsely charging plaintiff supports the failure to intervene claim. *See Anderson*, 17 F.3d at 557.

Defendants also assert that there was no constitutional violation here, and that plaintiff cannot show that evidence was fabricated, but as demonstrated above defendants are plainly wrong. (*See* Part II-A, above).

## V.   Defendants Are Not Entitled to Qualified Immunity

In *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000), the Second Circuit held that "the right not to be deprived of liberty as a result of *any government officer's* fabrication of evidence … was clearly established in 1996[.]" *Id*. at 357 (citation omitted; emphasis in original). Since *Zahrey*, the courts in this circuit have routinely denied qualified immunity to defendants where the plaintiff's evidence, if credited, would establish that defendants "intentionally withheld or manipulated key evidence during [the plaintiff's] arrest and prosecution." *See Dufort*, 874 F.3d at 354 (denying summary judgment on qualified immunity grounds). The record here reveals questions of fact as to whether defendants "fabricated" or "manipulated" evidence that plaintiff was intoxicated, which was the factual predicate for the two felony charges and the misdemeanor charge on which plaintiff went to trial (*see* Part II-A, above). For these reasons they are not entitled to qualified immunity.

Defendants' arguments to the contrary are, like the others they advance on this motion, baseless. They assert that the undisputed facts establish probable cause, or at least "arguable" probable cause, but they are wrong for the reasons discussed above (*see* Part II-A). And they again assert that the state court rulings that "permit[ed] the case to proceed" and allowed the Troopers "to testify regarding their observations of the Plaintiff" somehow establish that defendants did not violate any clearly established rights, but again they are wrong. The decision on which they rely, *Richardson v. Selsky*, 5 F.3d 616 (2d Cir. 1983), does not stand for that proposition or anything close to it. In *Richardson*, the court held that the right plaintiff asserted, viz., the right of an inmate "to have the presiding officer at [a prison] disciplinary hearing independently examine the credibility of … confidential informants" whose hearsay statements were introduced at the hearing, was not clearly established at the time of the alleged violation. *Id*. at 622-23 (citations omitted). For this reason, the circuit upheld the defendants' assertion of qualified immunity. *Id*. at 623. *Richardson* in no way suggests that the state court rulings in this case insulate defendants from liability; on the contrary, the law in this circuit is that those rulings are not entitled to preclusive effect here. *See Jenkins*, 478 F.3d at 92.

## **CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment should be denied in its entirety and the matter set down for trial.

Dated: New York, New York
      April 1, 2022

                                        HALE & MONICO LLC
                                        The Woolworth Building
                                        233 Broadway, Suite 820
                                        New York, New York 10279

                       By:          /s/
                                        Arthur G. Larkin, Esq.
                                        (646) 858-1180
                                        alarkin@halemonico.com