UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CHRISTOPHER JOHNSON,

                    Plaintiff,

v.

TROOPER ANDREW McMORROW,
TROOPER MARISA RODRIGUEZ, and
JOHN DOES ## 1-10,

                    Defendants.
----------------------------------------------------------X

**OPINION AND ORDER**

19-CV-06480 (PMH)

PHILIP M. HALPERN, United States District Judge:

      Christopher Johnson ("Plaintiff") brings this action against New York State Troopers Andrew McMorrow ("McMorrow") and Marisa Rodriguez ("Rodriguez" and together, "Defendants"),[1] asserting claims under 42 U.S.C. § 1983 and state law for malicious prosecution, denial of a fair trial, and failure to intervene, arising out of his traffic-stop arrest on February 9, 2018. (Doc. 1, "Compl").[2]

      Pending presently before the Court is Defendants' motion for summary judgment seeking dismissal of the Complaint under Federal Rule of Civil Procedure 56. (Doc. 94; Doc. 95, "Def.

---

[1] Plaintiff also proceeds against "John Does ## 1-10." (*See generally* Compl.). There is no indication that these individuals have been identified or served, but they remain parties to this action. Any claims against these unknown actors must, at this juncture, be—and are hereby—dismissed without prejudice for failure to prosecute. "Where discovery has closed and the Plaintiff has had ample time and opportunity to identify and serve John Doe Defendants, it is appropriate to dismiss those Defendants without prejudice." *Delrosario v. City of New York*, No. 07-CV-02027, 2010 WL 882990, at *5 (S.D.N.Y. Mar. 4, 2010); *see also Vanderwoude v. City of New York*, No. 12-CV-09046, 2014 WL 2592457, at *8 (S.D.N.Y. June 10, 2014) ("Discovery in this case has now closed, and the record does not reflect any attempts by Plaintiff to identify and/or serve this defendant. Indeed, neither party has mentioned this defendant in the summary judgment briefing. Based on this record, the Court *sua sponte* dismisses Plaintiff's claims against Defendant Police Officer Jane Doe Number 1 without prejudice for failure to prosecute.").

[2] The Court, on November 18, 2021, issued an order dismissing the fifth and sixth claims for relief alleging abuse of process and intentional infliction of emotional distress (Doc. 85), in light of Plaintiff's withdrawal of those claims (Doc. 82).

Br."; Doc. 95-1, "McMorrow Decl."; Doc. 95-2, "Rodriguez Decl."; Doc. 96).[3] Plaintiff opposed Defendants' motion (Doc. 99, "Opp. Br."; Doc. 100, "Larkin Decl."; Doc. 101, "Johnson Decl.", Doc. 102, "56.1") and the motion was fully submitted with the filing of Defendants' reply brief on April 15, 2022 (Doc. 103, "Reply").

For the reasons set forth below, Defendants' motion is GRANTED and the Complaint is dismissed.

## BACKGROUND

The Court draws the facts herein from the pleadings, Defendant's Rule 56.1 Statement, Plaintiff's responses thereto, and the admissible evidence proffered by the parties. Because the parties give differing accounts of the events leading up to Plaintiff's arrest, each side's version is set forth herein.

On February 9, 2018, Rodriguez was assigned to patrol with her field training officer, McMorrow. (56.1 at 3 ¶ 13). They were stationary in a marked troop car at or near the merge of State Route 9 and State Route 9A. (*Id*. at 4 ¶ 15). Defendants testified that, at approximately 3:30 a.m., they observed a white Dodge Challenger (the "Vehicle") enter Route 9 and rapidly accelerate to a visually estimated speed of 80 miles per hour in a posted 55-mile-per-hour zone. (Doc. 96-6, "McMorrow Tr." at 90:17-91:12, 115:12-15; Doc. 96-7, "Rodriguez Tr." at 36:21-37:9).

---

[3] The parties filed three versions of a Rule 56.1 Statement with responses for the Court's consideration on this motion (Doc. 86-1, Doc. 96, Doc. 102). The version submitted with Plaintiff's opposition appears to add responses to two proposed facts where previously it was indicated that "Plaintiff failed to respond to this proposed fact" (*compare* Doc. 96 ¶¶ 9, 10, *with* Doc. 102 ¶¶ 9, 10), and is otherwise substantively identical to the version submitted on Defendants' motion. Because Defendant's version annexes the evidence to which the parties cite, the Court references herein the version filed with Defendant's motion on March 2, 2022 unless otherwise indicated. Because Plaintiff set forth his own statement of material facts in the Rule 56.1 Statement without continuing the numbering of each paragraph from the prior section, when citing to the Rule 56.1 Statement, the Court refers to page numbers in addition to paragraphs to avoid confusion.

Defendants testified that Rodriguez then activated the patrol car's radar system to confirm the vehicle's rate of speed. (McMorrow Tr. at 92:5-11; Rodriguez Tr. at 37:2-9). McMorrow instructed Rodriguez, who was driving the troop car, to follow the Vehicle. (56.1 at 4 ¶ 18). Rodriguez, while maintaining a distance of several car lengths, followed the Vehicle for approximately three to four minutes. (*Id*. at 4 ¶ 19). Defendants testified that during that time, they observed the vehicle engage in multiple traffic violations, including an inability to stay in one lane, speed acceleration and deceleration, and a failure to use turn signals. (McMorrow Tr. at 94:14-95:15; Rodriguez Tr. at 38:12-19; *see also* Doc. 96-8, "Arrest Report"). McMorrow then directed Rodriguez to activate the emergency lights in order to advise the Vehicle that it was being pulled over. (56.1 at 5 ¶ 21). Rodriguez pulled up behind the Vehicle and both she and McMorrow exited the troop car for the approach. (*Id*. at 5 ¶ 23). McMorrow approached the driver's side of the Vehicle and Rodriguez approached the passenger's side. (*Id*. at 5 ¶ 24).

Plaintiff was the driver of the Vehicle when Defendants pulled him over in the early morning hours of February 9, 2018. (*Id*. at 12 ¶¶ 1-2). There were two passengers in the Vehicle, Rodington McLean and another individual. (*Id.* at 12 ¶ 4). McMorrow testified that he told Plaintiff he was being pulled over for speeding and having a hard time staying in his lane, and that he requested Plaintiff's driver's license and registration. (McMorrow Tr. at 109:14-110:12). McMorrow maintains that Plaintiff, instead of presenting his license, provided his entire wallet to McMorrow—which McMorrow believed was an indication of a possible impairment—so McMorrow handed the wallet back to Plaintiff, who thereafter displayed his conditional license. (*Id*.; *id*. at 111:7-13). McMorrow testified, and the arrest report indicates, that during this interview McMorrow detected a "distinct odor of an alcoholic beverage coming off of [Plaintiff's] breath" as he "slurred" his words, and that Plaintiff's eyes were "bloodshot, watery." (McMorrow Tr. at

3

110:22-111:6; Arrest Report). McMorrow testified that he then asked Plaintiff where he was coming from and whether he consumed any alcohol, and that Plaintiff told him that he had left a party in Ossining and had consumed alcohol. (McMorrow Tr. at 112:7-21; Arrest Report). McMorrow testified that because he suspected Plaintiff may have been intoxicated, he asked Plaintiff to step out of the Vehicle and to perform several standardized field sobriety tests ("SFSTs"). (McMorrow Tr. at 114:6-11, 114:20-11:1; Arrest Report). McMorrow testified, and the arrest report indicates, that Plaintiff failed the SFSTs, demonstrating multiple signs indicative of an individual who was intoxicated. (McMorrow Tr. at 116:3-117:5; Arrest Report). McMorrow testified that he then asked Plaintiff to take a preliminary breathalyzer test, but Plaintiff refused. (*Id*. at 117:6-11; Arrest Report). McMorrow then placed Plaintiff under arrest. (56.1 at 7 ¶ 35).

      Plaintiff sharply disputes this version of events, testifying that he was not speeding on February 9, 2018, and he does not know why he was pulled over. (Doc. 96-2, "Pl. Tr." at 127:4-20).[4] Plaintiff testified that McMorrow did not ask him for his license and registration. (*Id*. at 129:5-18). Rather, Plaintiff contends that when he was pulled over, McMorrow exited "the driver's seat of the police vehicle" and then pulled Plaintiff out of the car, while Plaintiff yelled "Why are you taking me out of my car? Why are you violating my rights? Why you keep harassing me? I feel threatened." (*Id*. at 127:21-128:22). Plaintiff testified that McMorrow did not ask him if he had been drinking, that he was not asked to perform SFSTs, and that he was never asked to take a breathalyzer. (*Id*. at 130:3-7, 133:16-23). Plaintiff maintains that he, McLean, and the other passenger in the Vehicle were on their way home after completing a job in Elmsford where they

---

[4] The Court notes that Plaintiff's opposition brief contradicts this testimony, taking the position that Plaintiff was, in fact, driving over the speed limit. (Opp. Br. at 6 ("At the time Johnson was pulled over, he was driving over the speed limit.")). Plaintiff was ultimately convicted of speeding. (56.1 at 11 ¶ 56).

4

had been decommissioning computers. (*Id*. at 105:10-106:14, 111:4-6, 114:14-21). He testified that he had not consumed any alcohol that night and had not been to a party. (*Id*. at 126:12-18).

Rodriguez testified that after McMorrow asked Plaintiff to step out of the Vehicle, she instructed McLean and the other passenger to get out of the Vehicle and stand by the roadside while she stood with them. (Rodriguez Tr. at 48:20-50:9). McLean, who was one of Plaintiff's passengers, recalled the same series of events. (Doc. 96-9, "McLean Tr." at 10:16-11:8). McLean further testified that he and the other passenger were situated a distance from Plaintiff and McMorrow and that they were engaged in a conversation with Rodriguez. (*Id*. at 11:9-14:3, 16:3-16). McLean testified that he did not recall Plaintiff being dragged out of the Vehicle, that Defendants did not assault Plaintiff, that he thinks McMorrow asked Plaintiff to take a breathalyzer, and that he could not recall if McMorrow administered SFSTs to Plaintiff. (*Id*. at 13:4-10, 14:7-10 51:3-16, 58:11-13). McLean testified that he did not tell Rodriguez that he had been drinking that night and, though he did not hear Plaintiff say that he had been drinking that night, Plaintiff "wasn't really in earshot, so I couldn't even hear what he would have told the officer. . . . I might have heard a little thing here and there, but not enough to hear the whole conversation." (*Id*. at 11:16-12:19, 17:15-18:3). McLean testified that he did not observe Plaintiff consume alcohol, but there were times that night that McLean did not see Plaintiff although they were together most of the time at the jobsite. (*Id*. at 78:5-12, 79:12-80:7).

It is undisputed that Defendants called for a tow truck which arrived after an hour or so to take the Vehicle and passengers from the scene, and Defendants transported Plaintiff to the Cortlandt Barracks. (56.1 at 8 ¶¶ 38-39). Plaintiff's arrest was processed and he was transported to Cortlandt Court for arraignment. (*Id*. at 9, 10 ¶¶ 44, 49). On or about August 7, 2018, Plaintiff was indicted by a Grand Jury on charges of aggravated unlicensed operation in the first degree,

5

driving while intoxicated, driving while impaired, and speeding. (56.1 at 11 ¶ 54). Plaintiff's first criminal trial took place in early 2019 and resulted in a hung jury. (*Id*. at 11 ¶ 55). A second trial was held in mid-2019 which resulted in a conviction for speeding, and Plaintiff was acquitted of all other charges. (*Id*. at 11 ¶ 56; *id*. at 15 ¶ 16).

Defendants now move for summary judgment dismissing the Complaint.

## **STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cty. of Orange*, 248 Fed. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 Fed. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 Fed. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her [ ] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

## ANALYSIS

Plaintiff raises three claims for relief under 42 U.S.C. § 1983: (1) malicious prosecution, (2) denial of a fair trial, and (3) failure to intervene. Plaintiff also asserts a malicious prosecution claim under state law. The Court addresses each of Plaintiff's claims in turn.

I. First Claim for Relief: Malicious Prosecution

To establish a § 1983 claim for malicious prosecution, "a plaintiff must . . . establish the elements of a malicious prosecution claim under state law." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)). Under New York law, a plaintiff must allege: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id*. (internal quotation marks omitted). When pressing a malicious prosecution claim under § 1983, the plaintiff must show also "that there was (5) a sufficient post-arraignment liberty restraint to implicate his Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). Recently, the United States Supreme Court modified the "termination" element of malicious prosecution. *See Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022) (holding "that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence."). Now the "termination" element requires only that a plaintiff show "that the criminal prosecution ended without a conviction." *Id.* "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Johnson v. City of New York*, No. 18-CV-06256, 2020 WL 2732068, at *5 (S.D.N.Y. May 26, 2020) (internal quotation removed); *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010).

"Once a suspect has been indicted [New York] law holds that the Grand Jury action creates a presumption of probable cause." *Jones v. City of New York*, 846 F. App'x 22, 24 (2d Cir. 2021) (quoting *Rothstein v. Carriere*, 373 F.3d 275, 283 (2d Cir. 2004)); *Colon v. City of New York*, 455 N.E.2d 1248, 1250 (N.Y. 1983). "This presumption may be rebutted by showing that the indictment 'was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Id.* (quoting *Rothstein*, 373 F.3d at 283). Thus, in order for a plaintiff to succeed in a malicious prosecution claim after indictment, a plaintiff must "establish what occurred in the grand jury and . . . that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially.'" *Rothstein*, 373 F.3d at 284 (quoting *Colon*, 455 N.E.2d at 1250).

"[W]here a plaintiff's only evidence to rebut the presumption of the indictment is his version of events, courts will find such evidence to be nothing more than mere conjecture and surmise that the plaintiff's indictment was procured as a result of conduct undertaken by the defendants in bad faith, which is insufficient to rebut the presumption of probable cause." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 272-73 (S.D.N.Y. 2010) (cleaned up) (collecting cases); *see also Merrill v. Copeland*, No. 19-CV-01240, 2022 WL 3212075, at *16 (N.D.N.Y. Aug. 9, 2022) (plaintiff's failure to explain how the proceedings before the grand jury were "tainted" insufficient to rebut presumption of probable cause created by grand jury indictment); *Gutierrez v. New York*, No. 18-CV-03621, 2021 WL 681238, at *12 (E.D.N.Y. Feb. 22, 2021) ("Plaintiff has adduced no evidence from which a reasonable juror could conclude that Defendants procured his indictment through fraud, perjury, or other bad faith."); *Soto v. City of New York*, 132 F. Supp. 3d 424, 456 (E.D.N.Y. 2015) (presumption unrebutted where the "[p]laintiff merely surmises there was bad faith . . . [and] has neither sought nor produced the grand jury minutes in this matter

9

precluding any further evaluation of what occurred before the grand jury"); *Peterson v. Regina*, 935 F. Supp. 2d 628, 643 (S.D.N.Y. 2013) (finding plaintiff's offer of his "suspicions of impropriety as proof of the defendants' misconduct before the grand jury" insufficient to rebut presumption). When a plaintiff has been indicted by a grand jury, a failure to offer independent, corroborating evidence by the plaintiff is fatal to a malicious prosecution claim under § 1983.

Contrariwise, where a plaintiff's testimony is corroborated by other evidence in the record, a court faced with competing versions of events may not resolve probable cause at summary judgment because there truly exists a genuine issue of material fact and the plaintiff is entitled to a trial on the merits. *McClellan v. Smith*, 439 F.3d 137, 146 (2d Cir. 2006) (defendant police officer's several variations of his version of events sufficient to rebut the presumption); *Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003) (plaintiff's presentation of proof of impropriety—a police booking sheet which indicated that the plaintiff was arrested in a different location from that which the officers alleged in their grand jury testimony—sufficient to rebut presumption); *Coleman v. Cnty. of Nassau*, No. 16-CV-06099, 2021 WL 5447323, at *11 (E.D.N.Y. Nov. 22, 2021) (plaintiff's testimony corroborated by witness's testimony and allocution exculpating plaintiff sufficient to rebut presumption); *Brandon*, 705 F. Supp. 2d at 274 (two officers' conflicting stories, with one supporting plaintiff's version of events, sufficient to rebut presumption).

There is no dispute that Plaintiff was indicted by a grand jury on August 7, 2018 on charges of aggravated unlicensed operation in the first degree, driving while intoxicated, driving while impaired, and speeding. (56.1 at 11 ¶ 54). Accordingly, there is a presumption that Plaintiff's prosecution was supported by probable cause for each of those offenses. To rebut this presumption, Plaintiff, therefore, must "establish what occurred in the grand jury" and "establish that those

circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially.'" *Rothstein*, 373 F.3d at 284 (quoting *Colon*, 455 N.E.2d at 1250). This, Plaintiff has not done. Indeed, Plaintiff has not offered any evidence of what occurred in the grand jury, let alone establish that what occurred in the grand jury would warrant a finding of misconduct.

Plaintiff, rather, argues only that his version of events of the underlying arrest, which he contends is corroborated by McLean's testimony, would permit a factfinder to infer that Defendants lied to secure an indictment or misrepresented or falsified evidence. Plaintiff has presented no such corroborating testimony sufficient to create an issue of fact on this malicious prosecution claim. The Court does not read McLean's testimony to support Plaintiff's version of his arrest. Indeed, McLean's answer "I don't remember" to virtually all of the questions asked of him corroborates nothing. In addition and in particular circumstance, McLean's testimony flatly contradicts Plaintiff's assertions that: (1) McMorrow forcibly removed Plaintiff from the Vehicle (*compare* Pl. Tr. at 127:21-129:18, *with* McLean Tr. at 51:3-16, 58:11-13); (2) Plaintiff was not asked to take a breathalyzer (*compare* Pl. Tr. at 130:3-7, 133:16-23, *with* McLean Tr. at 13:4-10); and (3) Rodriguez stayed quiet through the encounter with her hand on her weapon (*compare* Pl. Tr. at 130:8-16, *with* McLean Tr. at 11:9-15, 13:9-17, 16:3-16, 57:17-22).

Further, McLean's testimony does not support the following portions of Plaintiff's version of the arrest: (1) that Plaintiff did not inform McMorrow or any other officer he had been intoxicated (because according to McLean, "[Plaintiff] wasn't really in earshot so [McLean] couldn't even hear what [Plaintiff] would have told [McMorrow]" and McLean did not accompany the Plaintiff to the barracks and has no knowledge of what occurred there) (*compare* Pl. Tr. at 126:12-18, *with* McLean Tr. at 14:11-16, 17:15-18:3, 62:8-17); (2) that Plaintiff was not speeding on February 9, 2018 (because McLean testified that he did not look at the speedometer) (*compare*

11

Pl. Tr. at 127:4-20, *with* McLean Tr. at 45:20-46:8); and (3) that Plaintiff was not asked to perform SFSTs (because McLean could not recall if McMorrow administered SFSTs to Plaintiff) (*compare* Pl. Tr. at 130:3-5, *with* McLean Tr. at 14:7-10).

Simply put, Plaintiff has not offered anything more than his own version of events without corroboration. Plaintiff's conjecture that his version of events alone would permit a fact-finder to infer that Defendants lied to secure an indictment or misrepresented or falsified evidence is insufficient, as a matter of fact and law, to rebut the presumption of probable cause to prosecute in this case. The first claim for relief for malicious prosecution under § 1983 is dismissed.

Plaintiff's third claim for relief for malicious prosecution under state law likewise fails for the same reason as his malicious prosecution claim under § 1983. *See Frost*, 980 F.3d at 242 (to establish malicious prosecution under § 1983 a plaintiff must establish the elements of a malicious prosecution claim under state law); *Jones*, 846 F. App'x at 24 (grand jury indictment creates presumption of probable cause under New York law); *Rothstein*, 373 F.3d at 283 (same); *Colon*, 455 N.E.2d at 1250 (same). Accordingly, Defendants are entitled to summary judgment dismissing Plaintiff's first and third claims for relief.

II.   Second Claim for Relief: Denial of Fair Trial

"The Due Process Clause guarantees a criminal defendant's right to a fair trial." *Frost*, 980 F.3d at 244 (internal quotation marks omitted). "This right is violated '[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors.'" *Id*. (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)). To establish a fair trial claim based on fabrication of evidence, a plaintiff must show that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty,

or property as a result." *Ganek v. Leibowitz*, 874 F.3d 73, 90 (2d Cir. 2017) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)). "[U]nlike a malicious prosecution claim, 'a Section 1983 claim for the denial of a right to a fair trial based on an officer's provision of false information to prosecutors can stand even if the officer had probable cause to arrest the Section 1983 plaintiff.'" *Frost*, 980 F.3d at 244 (quoting *Garnett*, 838 F.3d at 277-78)).

Plaintiff alleged in the Complaint that McMorrow fabricated the following: (1) Plaintiff's breath smelled of alcohol; (2) Plaintiff stated he was driving home from a party; (3) Plaintiff's eyes appeared "glassy," his speech was slurred, and he had difficulty with "fine motor coordination;" (4) Plaintiff swerved from lane to lane while Rodriguez and McMorrow followed him; and (5) McMorrow administered three field sobriety tests to Plaintiff at the scene and that Plaintiff failed all three. (Compl. ¶ 62). Plaintiff contends that the falsified evidence consists of Defendants' incident report, their claimed observations of Plaintiff, and their statements repeating what Plaintiff allegedly said during the arrest. (Opp. Br. at 23).

While "'a § 1983 plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact,'" *McKenzie v. City of New York*, No. 17-CV-04899, 2019 WL 3288267, at *16 (S.D.N.Y. July 22, 2019) (quoting *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019)), summary judgment is appropriate where a plaintiff has failed to "present[ ] evidence indicating that an officer falsified information or fabricated evidence." *Bennet v. Vidal*, 267 F. Supp. 3d 487, 499 (S.D.N.Y. 2017). As evidence of fabrication, Plaintiff points only to the fact that his version of events—in which he alleges that McMorrow did not ask him if he had been drinking, that he was not asked to perform SFSTs, that he was never asked to take a breathalyzer, that he had not consumed any alcohol that night and had not been to a party—differs from the account Defendants provided to the prosecutor, and that his version is corroborated by McLean's

testimony. As discussed *supra*, McLean's testimony does not support Plaintiff's version of events and corroborates nothing. "[A] mere difference in the testimony of the plaintiff and the officers about what occurred on the day of the arrest is not sufficient evidence to create a genuine dispute of material fact as to whether [Defendants] intentionally falsified information or fabricated evidence." *Lauderdale v. City of New York*, No. 15-CV-01486, 2018 WL 1413066, at *8 (S.D.N.Y. Mar. 19, 2018); *see also Gutierrez v. New York*, No. 18-CV-03621, 2021 WL 681238, at *18 (E.D.N.Y. Feb. 22, 2021) (granting summary judgment on a denial of the right to a fair trial claim because plaintiff "offered no evidence in support of his claims that the evidence was planted"); *Isaac v. City of New York*, No. 16-CV-04729, 2020 WL 1694300, at *9 (E.D.N.Y. Apr. 6, 2020) ("Plaintiff claims that the testimony of four witnesses and [the] defendant . . . was false, but offers no evidence in support, other than his own testimony."); *Bennett*, 267 F. Supp. 3d at 498 (granting summary judgment dismissing right to a fair trial claim in the absence of evidence of deliberate misidentification); *Greene v. City of New York*, No. 08-CV-00243, 2017 WL 1030707, at *25 (E.D.N.Y. Mar. 15, 2017) (granting summary judgment on a fair trial claim because the contention that officers falsified evidence was based on "sheer speculation, and [did] not create a material issue of fact for trial"), *aff'd*, 742 F. App'x 532 (2d Cir. 2018).

Plaintiff has not presented evidence, other than his own testimony, that Defendants falsified information or fabricated evidence sufficient to defeat a motion for summary judgment. Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's fabrication of evidence claim.

III.   <u>Fourth Claim for Relief: Failure to Intervene</u>

"A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v.*

14

*Krzeminski*, 839 F.2d 9, 11 (2d Cir.1988). Because the Court has already ruled, however, that Plaintiff has failed to raise a genuine issue of material fact that his "constitutional rights" were "violated" by any officers under any theory, summary judgment must be granted as to this claim as well. *Hewitt v. City of New York*, No. 09-CV-00214, 2012 WL 4503277, at *10 (E.D.N.Y. Sept. 28, 2012), *aff'd*, 544 F. App'x 24 (2d Cir. 2013).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and the Complaint is dismissed.[5]

The Clerk of Court is respectfully requested to terminate the motion sequence pending at Doc. 94 and close this case.

Dated: White Plains, New York
   February 7, 2023

**SO ORDERED:**

_____
Philip M. Halpern
United States District Judge

---

[5] The Court need not and will not, given this disposition, consider Defendants' argument that they are entitled to qualified immunity.